[In Bank.—June 29, 1883.]

W. W. CROSS, ADMINISTRATOR OF THE ESTATE OF T. W. SIGOURNEY, DECEASED, RESPONDENT, *v.* MARKS ZELLERBACH ET AL., MARKS ZELLERBACH, APPELLANT.

SAME *v.* SAME—EUREKA LAKE AND YUBA CANAL COMPANY CONSOLIDATED, APPELLANT.

LAW OF THE CASE.—A decision on appeal, based upon a particular state of facts, is not binding in respect to questions arising on a second appeal, and depending for their solution upon facts essentially different.

MORTGAGE FORECLOSURE—PLEADING—CROSS-COMPLAINT—DEMURRER.—On the 1st of July, 1864, T. W. Sigourney brought an action to foreclose a mortgage against the property of a corporation known as the Eureka Lake Company. Marks

Zellerbach and certain other persons, alleged to be subsequent encumbrancers, were made defendants. Zellerbach afterwards succeeded to the rights of the company, and was the only one of the original defendants who appeared in the action. On the 23d of August, 1865, Sigourney and Zellerbach made the agreement referred to in the opinion of the court The Eureka Lake and Yuba Canal Company Consolidated was organized in pursuance of that agreement, and intervened in the action. which was then tried, and resulted in the recovery of a judgment by Sigourney. This judgment was reversed on appeal, and before any other proceedings were taken Sigourney died. and his administrator was substituted as plaintiff. A supplemental complaint was afterwards filed, setting up the agreement, alleging its non-performance by Zellerbach, and making the Eureka Lake and Yuba Canal Company Consolidated a defendant. Zellerbach answered, and the Eureka Lake and Yuba Canal Company Consolidated withdrew its intervention, and filed an answer, and also a cross-complaint claiming affirmative relief against Zellerbach and the plaintiff. Zellerbach demurred to the cross-complaint, and the demurrer was sustained. The action was again tried, and from the judgment rendered, separate appeals were taken by Zellerbach and the Eureka Lake and Yuba Canal Company Consolidated. After an extended examination of the case as presented by the two appeals, *held*, that the demurrer was improperly sustained, and that the court below proceeded on an erroneous view of the rights of the parties.

APPEAL from a judgment of the Superior Court of the county of Nevada.

The facts stated in the opinion cannot be understood without the cross-complaint. This complaint, therefore, is given in full as follows: —

And further and for cause of action, by way of cross-complaint, defendant avers that it is a corporation duly organized in the year 1865, under and pursuant to the laws of the State of New York, and having its principal place of business in the city and county of New York, in the State of New York.

That the corporate name of this defendant, under which it was organized and still exists, is the "Eureka Lake and Yuba Canal Company Consolidated."

That as such corporation it now is, and for more than fifteen years last past has been, the sole and exclusive owner of, in the sole and exclusive possession of, and is entitled to the sole and exclusive possession of all and singular the water ditches, property, land, premises, franchises, and privileges described in the original complaint in this case, and in the mortgage described therein

That in the year 1865, Marks Zellerbach, one of the defendants herein, had succeeded to the ownership of, and was the exclusive owner of, and possessed of, all and singular the prop-

erty described in the mortgage sought to be foreclosed by the original complaint in this case, holding and owning the same, however, subject to the lien of the two certain mortgages referred to in the agreement hereinafter set forth; and being desirous of selling such property, together with other and similar property in the vicinity thereof, by him, the said Zellerbach, either owned or controlled, and this defendant being willing to purchase all of said property, provided the same could be so purchased free and clear from all liens and encumbrances. Whereupon he, the said Marks Zellerbach, for the purpose of effecting such sale to this defendant, and of removing all such liens and encumbrances from the property about to be conveyed, and more particularly the lien of the mortgage of the plaintiff herein, and the lien of a certain other mortgage held by Sigourney and E. P. Marsellus, did enter into the following agreement with T. W. Sigourney.

"Articles of agreement made and entered into this twenty-third day of August, in the year of our Lord, one thousand eight hundred and sixty-five, between T. W. Sigourney, of the county of Nevada, in the State of California, party of the first part, and Marks Zellerbach, of the city and county of San Francisco, in said State of California, party of the second part.

" Whereas, the said party of the first part is the owner and holder of a certain note made by the Eureka Lake Company, for the sum of ten thousand dollars, which note is secured by a certain mortgage, made by said Eureka Lake Company to the said party of the first part, and hereinafter more particularly described.

"And whereas, the said party of the first part is also the holder and owner of a certain other note, made by the Eureka Lake Company, for the sum of twelve thousand dollars, which note is secured by a certain mortgage, made by the said Eureka Lake Water Company to the said party of the first part and one E. P. Marsellus, and which is also hereinafter more particularly described; and, whereas, the said party of the second part is desirous of purchasing such notes and mortgages, and the interest of said party of the first part therein, and the said party of the first part has consented and agreed to sell and convey the same to him, in manner hereinafter mentioned.

LXIII. CAL.—40.

"Now this agreement witnesseth, that in consideration of the premises, and of the sum of one dollar, to him in hand paid, the receipt whereof is hereby acknowledged, the said party of the first part does hereby, for himself, his heirs, executors, and administrators, covenant, promise, and agree to and with the said party of the second part, his executors, administrators, and assigns, in manner following — that is to say, that he will forthwith assign, transfer, and set over, by good and legal assignments, unto the said party of the second part, his executors, administrators, and assigns, the said hereinbefore recited note for ten thousand dollars, made by the said Eureka Lake Company, and all interest now due, or to grow due thereon, together with the said indenture of mortgage, made to secure payment of said note, and which indenture of mortgage is more particularly described as a certain indenture of mortgage, bearing date of the second day of July, A. D. 1859, and made between the Eureka Lake Company, party of the first part, and the said party hereto of the first part of the second part, and which is duly recorded in the office of the recorder of the county of Nevada, in said State of California, in book 3 of Chattel Mortgages, page 359, and also the said other hereinbefore recited note of twelve thousand dollars, made by the said Eureka Lake Water Company, and all interest now due, or to grow due thereon, together with all his interest in the said indenture of mortgage, made to secure the payment of said note, and which indenture of mortgage is more particularly described as follows: —

"A certain indenture of mortgage, bearing date the ninth day of November, A. D. 1861, and made between the Eureka Lake Water Company, party of the first part, and one E. P. Marsellus, and the said party hereto of the first part, parties of the other part, and which is duly recorded in the office of the recorder of said county of Nevada, in book 4 of Mortgages, page 235; and also in book 6 of Chattel Mortgages, page 523, such last described mortgage being given to secure said note of twelve thousand dollars; and also a certain other note of twenty-eight thousand dollars, which is now held and owned by said party hereto of the second part, and further, that he will immediately upon executing such assignments as aforesaid, place such assign-

ments, notes, and mortgages (so far as he can control the possession thereof) in the hands of John Parrott, of the city and county of San Francisco, aforesaid, to be by him held in escrow, and delivered to the said party of the second part, his executors, administrators, or assigns, at the time and in the manner hereinafter declared and set forth. And in consideration of the premises and such assignments so to be made to him as aforesaid, the said party of the second part does hereby, for himself, his executors, administrators, and assigns, covenant, promise, and agree to and with the said party of the first part, his executors, administrators, and assigns, in manner following—that is to say, that immediately upon the execution of such assignments, and the deposit thereof, together with said notes and mortgages as aforesaid, in the hands of John Parrott, as aforesaid, he, the said party of the second part, will make, execute, and deliver to said party of the first part, his certain promissory note for the sum of forty thousand dollars, payable in United States gold coin to the order of said party of the first part, nine months after the date thereof, with interest thereon at the rate of one half of one per cent per month until the maturity thereof; and if not paid at maturity, said note to bear interest at the rate of one and one quarter per cent per month until paid, and also, at the same time, will make, execute, and deliver to said party of the first part his certain other promissory note for the sum of ten thousand dollars, payable in United States gold coin, to the order of said party of the first part, nine months after the date thereof, and interest thereon at the rate of one and one quarter per cent per month; and further, that he will pay, or cause to be paid, the interest on such forty thousand dollar note monthly, in United States gold coin, and on the said ten thousand dollar note, at the end of every three months, in like gold coin. And it is hereby mutually agreed and declared by and between the said parties hereto, that in case the said party of the second part, his executors, administrators, or assigns, shall, at any time hereafter, and before the expiration of the time of payment of the said last hereinbefore mentioned and described note, be desirous of paying off and discharging the same, that, in such case, it shall and may be lawful for him or them so to do, upon giving thirty days' previous notice in writing of such his or

their intention, to the said party of the first part, his executors, administrators, or assigns. And, whereas, it is the intention of said party of the second part to forthwith proceed to organize a corporation for the purpose of carrying on and conducting the the works in Nevada and Sierra Counties, California, heretofore owned in and conducted by the said Eureka Lake Water Company (the property formerly belonging to whom the said hereinbefore recited mortgages in part cover), and by the Middle Yuba Canal and Water Company.

"Now this agreement further witnesseth, and it is hereby mutually declared and agreed, by and between the said parties hereto, that the hereinbefore mentioned and described assignments, together with the notes and mortgages so deposited, in escrow as aforesaid, in the hands of said John Parrott, shall remain and continue in his hands as security for the payment of the said hereinbefore mentioned and described notes of forty thousand dollars and ten thousand dollars, until said notes are paid or other security given as next hereinafter mentioned. And said assignments shall in no case be recorded, or filed for record, in the office of the county recorder of said county of Nevada until they are delivered to said party of the second part, as hereinafter provided for. And it is further mutually agreed and declared, by and between the said parties hereto, that if, in the formation of said company, as hereinbefore recited, the said party of the second part, his executors, administrators, or assigns shall deposit with the said John Parrott unencumbered and unassessable stock of said company, to the amount of one sixteenth part or share of the whole capital stock, as collateral security for the payment of said forty thousand dollar note, and the further amount of one sixty-fourth part or share of said stock, likewise unencumbered and unassessable, as collateral security for the payment of said ten thousand dollar note; then and in such case it shall be lawful, and it is hereby made the duty of said Parrott to receive such stock as such collateral security, and immediately thereupon to deliver to said party of the second part, his executors, administrators or assigns, or his or their attorney, the said assignments, notes, and mortgages so deposited with him in escrow as aforesaid; provided always, and it is made the duty of said Parrott, before

receiving such stock as security, and delivering such papers so deposited with him, as aforesaid, to be fully satisfied that the titles of all property formerly belonging to the Middle Yuba Canal and Water Company and the Eureka Lake Water Company are conveyed to, and the same fully and completely vested in the new company so to be formed as aforesaid, free and clear from encumbrances, other than liens, mortgages, or encumbrances held or controlled by said company, or by parties in trust for it, or held in escrow for its benefit.

"And it is further mutually agreed and declared that on payment of said notes the stock so deposited as security, as aforesaid, shall be retransferred and redelivered to said party of the second part, his executors, administrators, or assigns, and on the payment of either of said notes before the other, the part of said stock so specially deposited to secure such note shall be retransferred and redelivered as aforesaid; and on payment of a part of either of said notes, a proportionate part of the stock especially deposited to secure such note shall be so retransferred and redelivered as aforesaid.

"And it is further mutually agreed and declared that in case said notes of forty thousand dollars and ten thousand dollars, or either of them, shall remain wholly unpaid at the maturity thereof, it shall be the duty of said John Parrott to deliver on demand, to the said party of the first part, his executors, administrators, or assigns, the stock especially deposited as security for such notes so remaining unpaid as aforesaid; and in case a part only of said notes, or either of them, shall remain unpaid at the maturity thereof, then a proportionate part only of the stock so especially deposited as security for the note so remaining unpaid in part shall be so delivered to said party of the first part, his executors, administrators, or assigns. And upon the event of said party of the first part, his executors, administrators, or assigns so receiving any of such stock, as lastly hereinbefore provided, it shall and may be lawful for him or them to sell and dispose of said stock, or so much thereof as may be needful, at public sale, having first given thirty days' notice in writing of his or their intention to sell, and of the time and place of such sale, to the said party of the second part, his executors, administrators, or assigns, and out of the

proceeds arising therefrom shall, in the first place, pay the reasonable costs and expenses of such sale, and after payment thereof shall retain the amount due for principal and interest · on the note or notes so remaining unpaid, and the balance (if any), together with the stock unsold (if any), he shall immediately pay and transfer to the said party of the second part, his executors, administrators, or assigns.

" In witness whereof, the said parties hereto have, to duplicates hereof, set their hands and seals, the day and year first above written.          " T. W. SIGOURNEY.     [SEAL.]
                                " M. ZELLERBACH.      [SEAL.]
   " Signed, sealed, and delivered in the presence of
                                " OCTAVIUS BELL."

And defendant avers that said agreement in writing as above set forth was duly executed by said T. W. Sigourney and by Marks Zellerbach on the 23d day of August, 1865, and was by the parties thereto duly deposited with John Parrott, of the city and county of San Francisco, and the foregoing is a copy thereof, and of an agreement of which an imperfect copy is set out in the supplemental complaint of plaintiff herein.

That thereupon, as defendant is informed, verily believes, and avers the truth to be, T. W. Sigourney did execute assignment of the notes and mortgages in the said agreement specified, including the identical note and mortgage sought to be foreclosed in this action, to Marks Zellerbach, as in said agreement provided for; and the said Marks Zellerbach then and there did deliver to the said T. W. Sigourney his promissory note in writing, dated May 19, 1865, for forty thousand dollars, payable in United States gold coin, at the time and in the manner, with the interest, and in all respects as in said agreement specified, and did also make and deliver at the same time and place, and under the same date, his certain other promissory note for ten thousand dollars, payable in like gold coin, to the said T. W. Sigourney, at the time, in the manner, and with the interest, as in said agreement provided for; copies of which two several promissory notes are set out in the supplemental complaint herein.

And defendant avers that the consideration of the said two promissory notes included the sum of money due to T. W.

Sigourney upon the note secured by mortgage, described in the original complaint herein, and the sum of money due to said Sigourney on account of the note to him and E. P. Marsellus, mentioned in the foregoing agreement; that said promissory notes were, by the said Zellerbach, made and delivered, and by the said Sigourney received and held, in lieu of said former notes secured by mortgages; and thereupon and thereafter the note and mortgage described in the original complaint herein was held only as collateral security for the payment of said promissory notes, for forty thousand dollars and ten thousand dollars, as in the foregoing agreement expressly provided, and as this defendant is informed and verily believes, Marks Zellerbach has, since said date, and up to December 19, 1876, paid all the interest theretofore accrued on said two promissory notes to the said T. W. Sigourney, as in said agreement provided, and as in said notes specified.

Defendant is informed and verily believes and avers the truth to be, that Marks Zellerbach, in further compliance with the agreement aforesaid, and in the manner therein provided for, did deposit, or cause to be deposited, with John Parrott, unencumbered, unassessable paid-up capital stock of the Eureka Lake and Yuba Canal Company Consolidated, the corporation in said agreement specified and intended, to the extent of one sixteenth of all the capital stock of said company, consisting of twelve hundred and fifty shares of stock, as security for the payment of said promissory notes, which said stock, though less in quantity than called for by the contract, was by the parties thereto, and by each of them, taken and treated as a compliance with the contract, and the said stock was managed, controlled, and voted by the said Sigourney, or by his authority, and remained in the hands of John Parrott, as trustee under said contract, until disposed of as hereinafter stated.

And defendant is further informed, verily believes, and avers the truth to be, that, except as to the quantity of stock deposited, Marks Zellerbach has on his part fully kept and performed all the conditions, agreements and covenants by him, the said Zellerbach, to be kept and performed by said contract of August 23, 1865, between him, the said Zellerbach, and the said Sigourney, and hereinbefore set out.

And defendant avers that before receiving the stock aforesaid as security, the said John Parrott, trustee, became and was satisfied and reported to this defendant that the property in said agreement specified was free and clear from all encumbrances and liens, excepting only such as were held by defendant or by parties in trust for it, or in escrow for its benefit.

And defendant avers that the said Marks Zellerbach represented to it that the encumbrances in the agreement hereinbefore set out and referred to were so deposited as and for him, to be delivered up to him and cancelled upon the conveyance to it, the defendant, of the property of the Eureka Lake Company — the Eureka Lake Water Company — the Middle Yuba Canal Company and certain other property, upon the issuing and deposit of the stock called for by said agreement with John Parrott for T. W. Sigourney.

That relying upon such statement, and believing the same to be true, this defendant was thereby induced to purchase, and on, to wit, December 20, 1865, did purchase from the said Marks Zellerbach, and take and receive from him, the said Zellerbach, a deed of conveyance whereby he conveyed to defendant, in fee simple, all and singular the property in said agreement specified and referred to, including all the property in the mortgage in this cause described; that by said deed of conveyance the said Marks Zellerbach warranted and bound himself to defend the title to the property conveyed as against all liens and encumbrances, or adverse claims, and covenanted to and with defendant, the grantee in such conveyance, that all of said property was free and clear from liens and encumbrances of every nature and kind whatsoever.

That the conveyance aforesaid was duly recorded in the office of the county recorder of Nevada County, California, on, to wit, January 29, 1866, in book 21 of Deeds, pages 79–86, Records of Nevada County, and thereupon the stock was by this defendant issued to Marks Zellerbach, as called for by said contract, and by him deposited with John Parrott as aforesaid, and thence hitherto, until sold as hereinafter stated, has been managed and controlled by T. W. Sigourney, as collateral security for the payment of the promissory notes aforesaid.

And defendant denies that there is, in any event, due to

plaintiff the sum of ten thousand dollars and interest thereon at two and one half per cent per month, less five hundred dollars paid, as in his complaint specified; and in support of such denial avers that the sum of ten thousand dollars, the principal due on the promissory note secured by mortgage, and set out in the original complaint, formed a part of the consideration for the two promissory notes set out in the supplemental complaint.

And defendant is informed, verily believes, and avers the truth to be, that Marks Zellerbach has become and is insolvent, and is wholly without means to respond to the defendant for the damage it will sustain, or for any part thereof, if the mortgage herein is foreclosed, and decreed to be satisfied out of the property in such mortgage described, viz., out of the property of this defendant so conveyed to it under covenants and warranty by said Zellerbach as aforesaid.

Defendant further avers, that on, to wit, September 9, 1878, a decree of foreclosure was duly entered in this cause by the Hon. District Court, in and for the county of Nevada, which court was the predecessor to this honorable court, whereby and by virtue whereof, it was among other things decreed that the twelve hundred and fifty shares of capital stock aforesaid be first sold to satisfy the amount found due to T. W. Sigourney, viz., $63,077.74, and interest thereon from September 9, 1878, at seven per cent per annum, and that the residue of said sum if any, after a sale of said stock, be made by a sale of the mortgaged premises in the mortgage set forth in this cause; that in said cause the court had jurisdiction of the parties hereto, and of all of them, and of the subject-matter in the cause involved; that said judgment was duly entered, and was and remained in full force and effect until the 30th day of August, A. D. 1880, when it was, on an appeal therefrom by Marks Zellerbach, reversed by the Supreme Court of the State of California, as of the date of May 20, 1880, and a new trial ordered herein.

Defendant further avers that after the entry of the judgment and decree aforesaid, an order issued to the sheriff of Nevada County, in due form, commanding him to sell the twelve hundred and fifty shares of the capital stock so issued to T. W. Sigourney, as collateral security; whereupon said stock was, by the said sheriff, duly advertised for sale at public auction on the

13th day of February, 1879, on which last named day it was sold to this defendant for the full amount of the judgment and costs in said cause, to wit, for $66,255.63, said defendant being the highest and best bidder therefor.

And defendant avers that the sum bid by it for the said twelve hundred and fifty shares of stock was in excess of the market value thereof at that time, by at least twenty thousand dollars; that this defendant was induced to bid said sum of money thereon by Marks Zellerbach who represented to defendant that, being bound by his covenants in the deed of conveyance by him made to this defendant as aforesaid, to hold the defendant harmless from the lien of plaintiff's mortgage, he was desirous to have the twelve hundred and fifty shares of stock sold for a sum sufficient to satisfy the entire demand of plaintiff and costs; and that, if this defendant would bid therefor such sum, he, the said Zellerbach, would, upon being given time therefor, purchase from this defendant said twelve hundred and fifty shares at the price by it paid therefor, and interest thereon; whereupon, and relying upon such statements, defendant purchased the stock as aforesaid for said sum of $66,255.63, and thereupon, and on the same day, viz., on the 13th day of February, 1879, this defendant entered into a written agreement with said Marks Zellerbach, whereby, in consideration of the payment to it by the said Zellerbach, at any time within eighteen months next thereafter, of the sum of $66,255.63, and interest thereon at nine per cent per annum, it would deliver to said Marks Zellerbach the said twelve hundred and fifty shares of capital stock so by it purchased, together with an additional one thousand shares of such stock, and would deliver to Charles Allenberg an additional one thousand shares of its capital stock, and pay to said Allenberg two thousand dollars, and to said Marks Zellerbach the sum of two thousand dollars; which said two several sums of money were by defendant paid, and said thousand shares of stock were by it delivered to said Charles Allenberg, pursuant to said agreement, but that the said Zellerbach has neglected and refused to pay said sum of $66,255.63, or any part thereof, though the period of eighteen months has long since elapsed.

And defendant avers that by his acts in the premises as above set forth, and in various other ways, the said Zellerbach

approved and ratified the hypothecation and holding said stock as collateral for the payment of said promissory notes, and the sale thereof and the application of the proceeds arising therefrom to the satisfaction of the sum of money due to plaintiff herein.

Defendant further avers that the said sum of $66,255.63, realized from the sale of said twelve hundred and fifty shares of stock, was, after deducting costs, expenses, and fees of sale, paid over to T. W. Sigourney, and by him applied in satisfaction of his claim in this action.

Wherefore, in consideration of the premises, defendant prays this honorable court that it will, by its final decree herein, adjudge that said sum of money so realized from the sale of said twelve hundred and fifty shares of stock stand in lieu of and as the substitute for said stock.

That the plaintiff herein be decreed to retain and hold the same in full satisfaction of his claim in this action.

That plaintiff be adjudged to fully satisfy of record, and to cancel and deliver up the note and mortgage described in the original complaint herein, and to cancel and deliver up to Marks Zellerbach, defendant herein, the promissory notes for forty thousand dollars and ten thousand dollars in the supplemental complaint described, and that the note and mortgage to Sigourney & Marsellus be decreed to be fully satisfied, and for such other and further relief as may be just, proper, and in consonance with equity, and for costs of suit herein.

*C. W. Cross, R. H. Taylor, William Irvine,* and *Garber, Thornton & Bishop,* for Marks Zellerbach, on the appeal taken by him, and as respondent on the appeal of the Eureka Lake and Yuba Canal Company Consolidated.

*Wilson & Wilson; Searles, Niles & Searles,* and *Stanley, Stoney & Hayes,* for the Eureka Lake and Yuba Canal Company Consolidated, on its appeal, and as respondent on the appeal of Zellerbach.

*H. V. Reardan,* and *T. B. Reardan,* for the Plaintiff as respondent on both appeals.

ROSS, J.—These cases have been argued and submitted

together. The first is an appeal by the defendant Zellerbach, and the second an appeal by the defendant, the Eureka Lake and Yuba Canal Company Consolidated. These defendants and the plaintiff are the real parties to the controversy. On the first appeal of Zellerbach, reported in 55 Cal 431, the appeal came up and was considered on, (1) the complaint filed July 1, 1864, by Sigourney — the present plaintiff's intestate — which complaint was in the usual form for the foreclosure of a mortgage given to secure the payment of a promissory note for ten thousand dollars, executed July 2, 1859, to Sigourney, by a corporation called the Eureka Lake Company; (2) a complaint in intervention filed by the Eureka Lake and Yuba Canal Company Consolidated; (3) the answer of Sigourney to the complaint in intervention; and, (4) the findings and decree of the court. There were some other pleadings in the case, not, however, important to mention.

On that appeal it was rightly held here that the decree of the court then under review, which adjudged Sigourney a lien on the twelve hundred and fifty shares of the stock of the Eureka Lake and Yuba Canal Company Consolidated, to secure the payment of the ten thousand dollar note set out in the complaint then before the court, and which directed a sale of that stock to pay the amount of that note, was erroneous — first, because the complaint contained no averment to sustain such decree; secondly, because the contract between Sigourney and Zellerbach of date August 23, 1865, did not provide for any lien on the shares of stock as security for the note then in suit; thirdly, because, even if the court could have looked to the complaint in intervention in support of the decree, that complaint showed full compliance on the part of Zellerbach with all of the agreements, covenants, and conditions of the contract of August 23, 1865, which performance, according to the terms of that contract, entitled Zellerbach to the surrender of the note and mortgage on which the complaint, then under consideration, was based, as also the notes and the mortgage made to Zellerbach and Marsellus by the Eureka Lake Water Company for cancellation; and lastly, because the findings then before us showed that none of the stock in question was ever accepted by Sigourney as security, or as a compliance with the contract of August

23, 1865, but, on the contrary, that it was deposited with Parrott only in escrow, and that the contingency upon which the transfer was to take effect had never happened.

But, by the records now brought here, the case is presented in a very different aspect. It now appears that, after the going down of the remittitur from this court, the plaintiff was permitted to, and did, file in the court below a supplemental complaint, to which Zellerbach and the Eureka Lake and Yuba Canal Company Consolidated filed an answer; the complaint in intervention of the last-mentioned company was, by the permission of the court, withdrawn, and there was filed by it a cross-complaint, a demurrer to which, filed by Zellerbach, was sustained by the court, and which ruling constitutes the ground of the present appeal, taken by the cross-complainant — the other appeal being brought by Zellerbach.

An examination of the pleadings shows that the decision of this court on the former appeal does not cover the points now presented. Facts are now alleged which were not then before the court, and which, if true, materially change the rights of the parties. The averments of the cross-complaint must, of course, be taken as true, and such of the averments of the supplemental complaint as were found by the court below to be true, and such as are not denied, must also be accepted as facts on these appeals. Both the supplemental and cross-complaints allege, and the court below on the last trial found the fact to be, that, in pursuance of the provisions of the contract of August 23, 1865 — which is fully set out in both the supplemental and cross-complaints — Sigourney executed assignments to Zellerbach of the note and mortgage on which the original complaint was based, and of the twelve thousand dollar note made to him by the Eureka Lake Water Company, together with his (Sigourney's) interest in the mortgage given by the Eureka Lake Water Company to secure the payment of the note last mentioned and the twenty-eight thousand dollar note given to Marsellus, and that thereupon Zellerbach executed and delivered to Sigourney his two promissory notes for forty and ten thousand dollars, respectively, as provided for by the contract of August 23, 1865, and which are set forth in the supplemental and cross-complaints; and, further, that pursuant to the pro-

visions of the contract of August 23d, Sigourney deposited the note and mortgage set out in the original complaint, and the twelve thousand dollar note and mortgage securing the same, together with the assignments thereof, with Parrott, to be by him held as collateral security for the payment of the forty and ten thousand dollar notes executed to Sigourney by Zellerbach, or until Zellerbach should deposit with Parrott as security for said two last mentioned notes, the shares of stock of the Eureka Lake and Yuba Canal Company Consolidated as provided for in and by the contract of August 23d.  Upon the deposit of the stock as provided for by the contract, or upon the payment of Zellerbach's notes for forty and ten thousand dollars, Parrott was to deliver up to Zellerbach for cancellation the notes and mortgages deposited with him by Sigourney.  Zellerbach, it must be remembered, had become the owner of the property covered by the mortgage set out in the original complaint and of that covered by the mortgage executed by the Eureka Lake Water Company to secure the twelve and twenty-eight thousand dollar notes given to Sigourney and Marsellus, respectively, the latter of which he had also acquired; and being also the owner and controller of other property of like character as that mortgaged, had become desirous of organizing a corporation in the State of New York, to which he might sell all of the said property.   To accomplish his purpose in that regard it became necessary to free the property of all liens, and it was with that end in view that he entered into the contract with Sigourney—the holder of the liens—of date August 23, 1865. Both the supplemental and cross-complaints, as also the findings of the court below, show that Sigourney kept and performed all of the agreements, covenants, and conditions on his part provided to be kept and performed, in and by that contract.   Zellerbach performed a part of his.   He executed the forty and ten thousand dollar notes to Sigourney, and paid the interest thereon to the 19th day of December, 1876.  He also deposited with Parrott, pursuant to his agreement, the one sixteenth part of the capital stock of the Eureka Lake and Yuba Canal Company Consolidated, consisting of twelve hundred and fifty shares.   But he did not deposit with Parrott an additional one sixty-fourth part of the capital stock of that corporation as

in and by the contract of August 23, he had agreed to do. The cross-complaint, however, alleges that the twelve hundred and fifty shares he did deposit were so deposited, "as security for the payment of said promissory notes (for forty and ten thousand dollars respectively), which said stock, though less in quantity than called for by the contract, was by the parties thereto, and by each of them, taken and treated as a compliance with the contract, and the said stock was managed, controlled, and voted by the said Sigourney, or by his authority, and remained in the hands of John Parrott, as trustee under said contract until disposed of as hereinafter stated."

Parrott, according to the averments of the cross-complaint, having, before receiving the stock, become satisfied, and so reported to the cross-complainant, that the property was in the condition required by the contract of August 23, 1865, and Zellerbach having represented to it that the encumbrances in the said contract referred to were deposited for him to be delivered up and cancelled upon the conveyance to the cross-complainant of the property, and upon the deposit of the stock with Parrott as by the contract provided, the cross-complainant, relying upon such statements and believing them to be true, was thereby induced to purchase, and on December 20, 1865, to take from Zellerbach a deed of conveyance, whereby he conveyed to it all of the property referred to in the contract of August 23d, including that described in the mortgage sought to be foreclosed by the original complaint filed in this action, and by which deed Zellerbach warranted and bound himself to defend the title to the property conveyed as against all liens and encumbrances, or adverse claims, and covenanted to and with the grantee, the cross-complainant here, that all of the property was free and clear of liens and encumbrances of every nature and kind whatsoever. When the twelve hundred and fifty shares of stock which were deposited with Parrott were sold under the decree of the District Court, which was subsequently reversed by this court on the former appeal, they were purchased by the cross-complainant for the sum of $66,255.63, which, according to the averments of the cross-complaint, was at least twenty thousand dollars in excess of the market value thereof. Cross-complainant, according to the averments of its

complaint, was induced to bid said sum for the stock by Zeller-
bach, who represented to it that, being bound by the covenants
in his deed of conveyance to hold cross-complainant harmless
from the lien of plaintiff's mortgage, he was desirous of hav-
ing the twelve hundred and fifty shares of stock sold for a
sum sufficient to satisfy the entire demand of plaintiff and costs,
and that, if cross-complainant would bid therefor such sum, he,
Zellerbach, would, upon being given time therefor, purchase
from cross-complainant said twelve hundred and fifty shares at
the price by it paid therefor, with interest thereon; whereupon,
and relying upon such statements, cross-complainant purchased
the stock as aforesaid, and thereupon, and on the same day, to
wit, February 13, 1879, cross-complainant entered into a written
agreement with Zellerbach, whereby, in consideration of the
payment to it by him, at any time within eighteen months
thereafter, of the sum of $66,255.63, and interest thereon at
nine per cent per annum, it would deliver to the said Zellerbach
the twelve hundred and fifty shares so by it purchased, together
with an additional one thousand shares of such stock, and would
deliver to one Allenberg an additional one thousand shares, and
pay to said Allenberg two thousand dollars in money, and to
the said Zellerbach a like sum of two thousand dollars in
money; which said two several sums of money were so paid by
cross-complainant, and said one thousand shares of stock were
by it so delivered to Allenberg; by all of which, it is averred,
Zellerbach approved and ratified the hypothecation and holding
of the twelve hundred and fifty shares of stock as collateral
security for the payment of his notes for forty and ten thousand
dollars respectively, and approved and ratified the sale thereof,
and the application of the proceeds thereof, to the satisfaction
of the amount due the plaintiff. The amount so bid and paid
by the cross-complainant for the stock was, according to the
averments of the cross-complaint, as also those of the supple-
mental complaint, sufficient in amount, after deducting costs
and the expenses of sale, to fully satisfy the plaintiff's claim in
this action, and was, by the officer making the sale, paid to and
received by Sigourney; and both the supplemental and cross-
complaints pray that the plaintiff be decreed to retain and hold
the same in full satisfaction of his claim in this action, and that ·

he be adjudged to fully satisfy of record, and to cancel and deliver up the note and mortgage described in the original complaint, and to cancel and deliver up to Zellerbach the forty and ten thousand dollar notes executed by him, and that the twelve thousand dollar note executed to Sigourney by the Eureka Lake Water Company, together with the mortgage executed by that corporation to Sigourney and Marsellus, be decreed to be fully satisfied.

If the facts be as stated — and for the purposes of our decision we must so consider them — why should not such a decree be entered? It is true that the original complaint was one simply for the foreclosure of the mortgage executed July 2, 1859, by the Eureka Lake Company. But, during the pendency of the action, Zellerbach, who had become the owner of the property subject to the liens of Sigourney, desired to free the property of those liens in order that he might sell it, with other property, to the Eureka Lake and Yuba Canal Company Consolidated. For that purpose he made the contract with Sigourney of August 23, 1865. No objections have been urged to the validity of that contract, and it is clear that none could be successfully urged. Sigourney performed his part of the contract, and Zellerbach performed his obligations thereunder in part. He executed to Sigourney the forty and ten thousand dollar notes therein provided for, and from that time forth, according to the terms of the contract, the note and mortgage set out in the original complaint, as also the note and mortgage executed by the Eureka Lake Water Company, were held only as collateral security for the payment of Zellerbach's notes for ten and forty thousand dollars respectively. The latter became the principal obligations, and were assumed by Zellerbach in order that he might free the property of the liens held by Sigourney, to the end that he might effect the sale he contemplated making to the Eureka Lake and Yuba Canal Company Consolidated. In further pursuance of the contract with Sigourney, he (Zellerbach) deposited with Parrott twelve hundred and fifty shares of the capital stock of the Eureka Lake and Yuba Canal Company Consolidated. These shares were to be held as collateral security for the payment of the forty thousand dollar note executed by Zellerbach to Sigourney. The additional amount of one

sixty-fourth part of the capital stock of the same corporation which the contract required Zellerbach to deposit as collateral security for the payment of the ten thousand dollar note executed by him to Sigourney, he did not deposit; but the cross-complaint alleges that the twelve hundred and fifty shares so deposited were by both Sigourney and Zellerbach "taken and treated as a compliance with the contract, and the stock was managed, controlled, and voted by the said Sigourney, or by his authority, and remained in the hands of John Parrott as trustee under said contract" until taken and sold by the sheriff.

Whether under such a state of facts a lien attached to the twelve hundred and fifty shares of stock for the payment of the forty and ten thousand dollar notes executed by Zellerbach, or either of them, we find it unnecessary to determine; for when the stock was sold under and by virtue of the decree of the District Court, which was subsequently reversed by this court, the cross-complainant purchased it, at the instance and at the request of Zellerbach, and under a definite and specific contract with him, for a sum largely in excess of its market value, and sufficient to discharge what Zellerbach had bound himself to discharge, to wit: the liens on the property held by Sigourney. The money thus paid and bid for the twelve hundred and fifty shares of the stock of the Eureka Lake and Yuba Canal Company Consolidated, less costs and the expenses of sale, was paid over to Sigourney, and according to the averments of the supplemental and cross-complaints, was sufficient in amount to satisfy the entire demand of the plaintiff. If the facts be as stated we see no reason why a decree should not be entered substantially as prayed for in both the supplemental and cross-complaints, to the effect that the plaintiff retain and hold the money so paid in full satisfaction of his demand in the action, and that he be adjudged to satisfy of record and to cancel and deliver up the note and mortgage described in the original complaint, and to cancel and deliver up to Zellerbach the forty and ten thousand dollar notes executed by him, and that the twelve thousand dollar note executed to Sigourney by the Eureka Lake Water Company, together with the mortgage executed by that company to Sigourney and Marsellus be decreed to be fully satisfied. Such decree would give effect to the contracts of the

parties and do exact justice between them.   All of the parties in interest are, with sufficient pleadings, before a court of equity, which can and will take hold of the entire case and give effect to their contracts legally made.

We cannot at all assent to the proposition that the agreement under which the cross-complainant purchased the stock was "binding on nobody, and utterly void for want of consideration." The liens held by the plaintiff were the very liens Zellerbach had covenanted to remove; the debt for which they stood as security had become his debt, and, according to the facts as now made to appear, it was for the very purpose of paying that debt and satisfying those liens that he induced the cross-complainant to pay for the stock a sum of money largely in excess of its value and sufficient to pay the debt, and thereby discharge the liens, agreeing at the same time, and as part of the same transaction, to repurchase the stock, within a given time, at the same price (with interest as provided for), and obtaining for himself two thousand dollars in money, and a contract for an additional one thousand shares of stock, together with two thousand dollars in money, and one thousand shares of stock for one Allenberg.  Performance of the agreement on the part of the cross-complainant is averred, and it would be grossly inequitable to permit Zellerbach to repudiate the agreement under which, at his request, the money of the cross-complainant went to pay his debt, and to remove encumbrances which he had, in the most solemn manner, bound himself to remove, and by which he received other and further considerations of value.

Judgment reversed and cause remanded, with directions to the court below to overrule the demurrer to the cross-complaint, and for further proceedings not inconsistent with this opinion.

MYRICK, J., SHARPSTEIN, J., McKEE, J., and THORNTON, J., concurred.