[No. 19251.   In Bank.—July 6, 1894.]

## E. G. DULIN, RESPONDENT, *v.* PACIFIC WOOD AND COAL COMPANY, ET AL., APPELLANTS.

CORPORATIONS—ELECTION OF PRESIDENT—VOID VERBAL AGREEMENT—SPECIFIC PERFORMANCE.—A verbal agreement among the stockholders of a corporation, accompanying a division of stock and a loan of money, to the effect that one of the stockholders who loaned money to another to purchase stock should be president for two years, and should receive a salary of $125 a month so long as he should retain an interest in the corporation, there being no agreement that such stockholder should be elected as a director, and no means being provided for the carrying out of the agreement, is void, and cannot be specifically enforced.

ID.—ELECTION OF DIRECTORS—LEGAL RIGHT OF STOCKHOLDERS.—It is the legal right of a stockholder to vote his stock as he pleases in the election of directors, and though he may confer upon another stockholder the right to vote his stock by a written proxy for that purpose, yet the court cannot compel him to do so in the absence of an agreement upon or for a valuable consideration that he would give such proxy.

ID.—RIGHTS OF PLEDGOR OF STOCK.—The pledgor of stock has the right to vote it, where the pledgee does not claim the right to vote it under an agreement with the pledgor.

ID.—CUMULATION OF STOCK IN VOTING—NEGLECT OF STOCKHOLDER.—Where a stockholder had in his own hands enough stock to have elected himself and another director by cumulation of his shares in voting, but neglected to do so, on account of a verbal agreement among the stockholders that he should be president, and accordingly scattered his votes, expecting the agreement to be performed, and as the result of the election was defeated as director, the court has no power to relieve him from his own error, or do that for him which he had the power to do for himself, and cannot declare him elected, nor order a new election.

ID.—ELIGIBILITY OF PRESIDENT.—One not elected as director is not eligible to the office of president, and neither the board that was elected nor the court can make him president.

APPEAL from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion.

*D. L. Withington,* and *Works & Works,* for Appellants.

The agreement between the stockholders to elect Clugston president of the corporation was a valid agreement, which was adopted and consummated by the corporation itself, by and through the stockholders. (*Chater* v. *San Francisco Sugar Ref. Co.,* 19 Cal. 220, 245; *Shorb* v. *Beaudry,* 56 Cal. 446, 450; · *Clute* v. *Loveland,* 68 Cal. 254, 258; *Cornell* v. *Corbin,* 64 Cal. 197, 200; *Sheridan Electric Light Co.* v. *Chatham Nat. Bank,* 5 N. Y. Supp. 530, 532; *Havemeyer* v. *Havemeyer,* 43 N. Y. Sup. Ct. 508; *Barnes* v. *Brown,* 80 N. Y. 527, 533, 536; *Seymour* v. *Detroit etc. Mills,* 56 Mich. 117; *Wilbur* v. *Stoepel,* 82 Mich. 344; 21 Am. St. Rep. 568; *Faulds* v. *Yates,* 57 Ill. 416; 11 Am. Rep. 24.) The right to elect officers is a statutory right, and may be waived by the stockholders. (*People* v. *Fairbury,* 51 Ill. 149; *In re Cooper,* 93 N. Y. 507; *Embury* v. *Conner,* 3 N. Y. 511; 53 Am. Dec. 325; *Lee* v. *Tillotson,* 24 Wend. 337; 35 Am. Dec. 624; *Commonwealth* v. *Cullen,* 13 Pa. St. 133; 53 Am. Dec. 450; *Shutte* v. *Thompson,* 15 Wall. 151.) Besides, the statute providing for the annual election of officers is merely directory. (*Beardsley* v. *Johnson,* 121 N. Y. 224.) But, assuming that all the stockholders of a corporation cannot waive an annual election, yet where they have agreed, for the purpose of promoting the general welfare of the corporation, and to protect the interests of all the stockholders, upon a valuable consideration, that certain of their numbers should be elected to certain offices, this agreement is a valid agreement; and where an election has been had, and an officer elected in accordance with such an agreement, a stockholder who is a party to it, and who retains the benefit, is estopped from contesting the election. (Cook on Stockholders, 616; *In re Syracuse etc. R. R. Co.,* 91 N. Y. 1; *Regina* v. *Greene,* 2 Q. B. (Ad. & El., N. S.) 460; *Rex* v. *Trevenen,* 2 Barn. & Ald. 339; *Johnston* v. *Jones,* 23 N. J. Eq. 216.) The contention that the contract is void because of being verbal is without force, as the

statute of frauds cannot be used as a means of perpetrating a fraud. (*Piper* v. *Fosher*, 121 Ind. 407; *Teague* v. *Fowler*, 56 Ind. 569; *Busick* v. *Van Ness*, 44 N. J. Eq. 82; *Dodge* v. *Wellman*, 43 How. Pr. 427; *Savage* v. *Lee*, 101 Ind. 514, 521; *Seaman* v. *Aschermann*, 51 Wis. 678; 37 Am. Rep. 849; *McBurney* v. *Wellman*, 42 Barb. 390; *Wolke* v. *Fleming*, 103 Ind. 110; 53 Am. Rep. 495.)

*Conklin & Hughes*, and *V. E. Shaw*, for Respondent.

The directors of a corporation must elect the president, and they will not be allowed to contract as to how their votes shall be cast. Such agreements are against public policy, and void, and the fact that there is a consideration for such promise renders it all the more obnoxious. (*Forbes* v. *McDonald*, 54 Cal. 98; *Fuller* v. *Dame*, 18 Pick. 472; *Guernsey* v. *Cook*, 120 Mass. 501; *West* v. *Camden*, 135 U. S. 507; Morawetz on Corporations, secs. 516–19; Ray on Contractional Limitations, 126.) The alleged agreement is void, as it was not by its terms to be performed within one year. (Civ. Code, sec 1624, subd. 1; *Patten* v. *Hicks*, 43 Cal. 509; *Feeney* v. *Howard*, 79 Cal. 535; 12 Am. St. Rep. 162; *Dunphy* v. *Ryan*, 116 U. S. 495; *Swift* v. *Swift*, 46 Cal. 266.) An agreement on the part of a stockholder that another shall be president of the company for a term of years, is not the agreement of the corporation, and cannot be enforced against the corporation. (*Morrison* v. *Gold Mt. G. M. Co.*, 52 Cal. 306–09. See *Seymour* v. *Detroit Copper etc. Mills*, 56 Mich. 117; *Woodruff* v. *Wentworth*, 133 Mass. 309.)

The Court.—Upon further consideration of this case in Bank, we are satisfied with the opinion rendered in Department, and, with the conclusion therein reached, and for the reasons given in said opinion, the judgment is affirmed. Fitzgerald, J., McFarland, J., Van Fleet, J., Garoutte, J.

Beatty, C. J , dissented.

The following is the opinion above referred to, rendered in Department One on the 27th of February, 1894.

HAYNES, C.—Plaintiff had judgment, and the defendants appeal therefrom upon the judgment-roll.

This proceeding was brought under section 315 of the Civil Code, to set aside the election of B. D. Clugston, one of the defendants, as a director of the defendant corporation, and to confirm the election of plaintiff as such director. Clugston answered, and also filed a cross-complaint, to which plaintiff filed an answer.

The findings cover eight or nine pages of the transcript, but may be summarized as follows:

The Pacific Wood and Coal Company is a corporation having a capital stock of $10,000, divided into 100 shares of $100 each. G. A. Garretson and the members of his family owned 69 shares of said stock, all of which he controlled. Defendant B. D. Clugston owned 25 shares, J. S. Akerman 4 shares, and plaintiff 2 shares. That on June 17, 1892, defendant B. D. Clugston agreed verbally with G. A. Garretson to purchase the 69 shares owned and controlled by him, and to pay therefor $140 per share, which agreement, if carried out, would have given Clugston all of the stock except 6 shares.

That on the following day, and before this sale was consummated, a verbal agreement was made between the defendant, Clugston, George G. Garretson, the son of G. A. Garretson, J. S. Akerman, and the plaintiff, with the consent of all the stockholders of the corporation, that defendant Clugston should retain 21 shares of the stock agreed to be purchased, making him the owner of 46 shares; that George G. Garretson and the plaintiff should each take and pay for enough of said stock to give each 25 shares, and that Akerman should retain the 4 shares then owned by him. It was further agreed that defendant Clugston should lend to George Garretson $2,400, to be used to pay in part for his stock,

to secure which loan he gave his note and pledged 10 shares of his stock; and it was also agreed that the corporation should mortgage its property and thereby raise the sum of $4,000 for the benefit of George G. Garretson and the plaintiff, to be used to pay for the stock purchased by them, $2,000 to each, and for which they gave their several notes. The defendant Clugston agreed to this division of the stock, loaned the $2,400 to George G. Garretson, and consented to the mortgaging of the property of the corporation, upon the verbal agreement of all the stockholders that defendant Clugston was to be president of the company for two years, at the expiration of which time the mortgage notes were to become due, and to receive a salary of $125 per month while he retained an interest in the corporation, the plaintiff to be treasurer at the same salary, and that Akerman should use his 4 shares to protect defendant Clugston; and on the same day the notes were executed, the stock delivered, and the salaries fixed as above stated, defendant Clugston being then president.

The election for directors here in question was held on November 17, 1892. Prior to this election B. D. Clugston transferred to his daughter, L. Clugston, and to James Wells, each, one share of his stock.

The board consisted of five directors, and six candidates were nominated, viz: the plaintiff, Dulin, the defendant B. D. Clugston, L. Clugston, Wells, Akerman, and Garretson.

The plaintiff cumulated his votes for three candidates, viz: Akerman, Dulin, and Garretson, giving each $41\frac{2}{3}$ votes. Garretson cumulated his votes for the same candidates, giving each $41\frac{2}{3}$ votes. Akerman voted his 4 shares for five candidates, the three above named, and Wells and L. Clugston, giving each 4 votes. Wells voted his one share cumulated for three candidates, viz: B. D. Clugston, L. Clugston, and himself, giving each $1\frac{2}{3}$ votes. L. Clugston voted her share for the same candidates, and gave each $1\frac{2}{3}$ votes. B. D. Clugston's 44 shares were cumulated, and gave himself

73½, to L. Clugston 73½, and to Wells 73 votes.  If these votes had been counted as cast, Dulin, Akerman, and Garretson would each have had 87⅓ votes, B. D. Clugston 76 5-6 votes, L. Clugston 80 5-6, and Wells 80⅔ votes.

The defendant B. D. Clugston, the president of the corporation, presided at the election, and L. Clugston was appointed teller.  The president objected to counting the 10 shares belonging to Garretson which were pledged to him.  These 10 shares cumulated, gave 50 votes, and were tendered in equal proportions to the three candidates, Dulin, Akerman, and Garretson, amounting to 16⅔ votes each, and if thrown out, as cast, would have left these three candidates each 70⅔ votes, and the result would have been the election of B. D. Clugston, L. Clugston, and James Wells, and the remaining three candidates tied.  But in counting the votes, the 50 votes being the cumulation of the 10 shares of Garretson's stock pledged to B. D. Clugston, were not counted, 8⅓ votes thereof being deducted from Akerman, and 41⅔ from Dulin, thus defeating Dulin, and electing Akerman and Garretson.

Clugston, the pledgee of said 10 shares, did not claim the right to vote them, nor is it claimed or found that Garretson had agreed in any manner not to vote them, and if counted as they were cast, it is found by the court, Dulin would have been elected and Clugston defeated.

The cross-petition of B. D. Clugston, however, sets up the verbal agreement hereinbefore stated, to the effect that Clugston should be president for two years, and should receive a salary of $125 per month so long as he should retain an interest in the corporation, and that but for this agreement he would not have consented to part with a controlling interest in the stock, nor to the mortgage upon the company's property to aid Dulin and Garretson to purchase their stock, nor have loaned Garretson the $2,400, and charges a conspiracy to defeat his election, and prays that it be adjudged and decreed that he and the said L. Clugston, James Wells, George G.

Garretson, and J. S. Akerman were duly elected directors, and that he is entitled to be elected president.

The court also found that said agreement was not reduced to writing; that it was material, important, and necessary to the protection of Clugston's interests, but that neither Dulin, Garretson, or Akerman at any time agreed in express terms to elect Clugston as a director.

As conclusions of law the court found that said agreement was void, because not to be performed within a year, and not in writing, and that the votes cast for the plaintiff, including the 10 shares of pledged stock, should have been counted, and that Dulin was duly elected a director.

No different conclusion of law could possibly be reached, unless the verbal agreement found by the court to have been made can be specifically enforced, and this cannot be done.

The code provides how elections shall be held, declares that every stockholder shall have the right to vote in person or by proxy " the number of shares standing in his name," that votes may be cumulated and given to one or more, or all the candidates, not exceeding the number to be elected, and the candidates receiving the highest number of votes shall be declared elected; and these votes must be cast by the owner of the shares in person, or by proxy in writing, and only members of the corporation can be a proxy. (Civ. Code, secs. 307, 308, 312.) No proxy was given to the appellant to vote any of the stock held by Dulin, Garretson, or Akerman, nor was any required by the agreement to be given. The agreement provided no means for the accomplishment of the end or purpose to be accomplished. It does not seem to be questioned that Dulin and those co-operating with him had the right to vote their stock, but only that it should have been so voted as to elect appellant. But appellant had in his own hands enough stock to have elected himself and one other director in the face of any combination that could have been made; and the court has no power to

relieve him from his own error, or do that for him which he had the power to do for himself.

If the objects sought to be accomplished by the agreement were lawful and proper, a point not considered, no means being provided for its accomplishment, the specific performance of it cannot be enforced. No legal obligation rested upon plaintiff to cast his votes for appellant, and appellant having been defeated, the court cannot declare him elected; nor are the circumstances such as to justify the ordering of a new election. Section 315 of the Civil Code provides that the court may "confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice." It is true, as contended by appellant, that the power given the court by this section is an equitable one; but it is obvious that if the plaintiff was legally elected, that the court can only affirm his election, and if appellant was defeated through his effort to elect his daughter and Wells, as well as himself, the court cannot declare him elected; and, if not elected, neither the board that was elected, nor the court, can make him president, since only a director is eligible to the office of president.

But appellant suggests that the purpose of the agreement might have been consummated by waiving an election, and thus continuing the old board of directors with its officers. But that was not done, nor agreed to be done. The election was held without objection, and appellant freely participated, and undertook to carry out the agreement by and through such election, and must be held bound by its results, unless he can show that the election was illegal. The legal right of a stockholder to vote his stock as he pleases cannot be questioned, but he may confer upon another stockholder the right to vote his stock by giving a written proxy for that purpose; but the court cannot compel him to do so in the absence of an agreement upon or for a valuable consideration that he would give such proxy.

But the agreement was one absolutely incapable of

enforcement, otherwise than by abstaining from an election, since any board that could be elected must be at liberty to choose its president, and its choice cannot be controlled by the court. It is conceded by counsel for appellant that a director cannot obligate himself to vote in a certain way, and this being so, the courts must be powerless to direct his vote; nor can we see any ground upon which the holding of an election could be enjoined, even if it had been agreed that none should be held, and if it could not be enjoined, it cannot be vacated.

But counsel say that "this is not an action to enforce the performance of a contract, that it is an effort to uphold an election against the attacks of respondent." But, as we have seen, the result of the election, as declared by appellant, was by the arbitrary exclusion of votes legally cast; and if it is not an action to enforce the performance of a contract, the allegation of the agreement in the cross-complaint and the finding of the fact are wholly immaterial.

That appellant loaned $2,400 to Garretson upon his promissory note secured by a pledge of stock of that value, and that a mortgage was given by the corporation to aid him and respondent in the purchase of their stock, are not made the grounds of complaint, because of any insufficiency of the security, but seem to be stated as constituting a consideration for the agreement. The stock sold, however, was not that of appellant. He parted with no stock. He simply took less than he intended to buy, and let the remainder be sold to plaintiff and Garretson. Whether, under these circumstances, there was any valuable consideration for the agreement, such as is necessary to authorize a specific performance, may well be questioned.

The question as to the statute of frauds is unimportant. As we have seen, appellant could not control respondent's stock or any not owned by himself otherwise than by a written proxy (unless transferred to him upon the books), and this by force of the statute regu-

lating elections by corporations. The alleged performance of the agreement by appellant could not give him the control of stock not held by him, nor authorize him to reject votes based upon it, whether the contract was one that might be wholly performed within a year or not.

The court found that the performance of this agreement was necessary for the protection of appellant, but no facts are alleged from which such conclusion could be drawn, unless it be the loss of $125 per month, which seems not to have been based upon services to be rendered, but which was to continue as long as he retained an interest in the corporation. Such agreement is void. It may be that appellant will suffer wrong and injustice, but the mere apprehension of it will not justify the court in granting the relief here demanded, or any other relief under the facts now existing. We cannot assume that plaintiff, and those acting with him upon the board, will not properly conduct the business of the corporation, or injuriously affect the interests of appellant as a stockholder. When they do so, or threaten to do so, a court of equity will hear his complaint.

I think the judgment should be affirmed.

BELCHER, C., and SEARLS, C., concurred.