[Civ. No. 1731.   Second Appellate District.—June 11, 1915.]

VIRGINIA M. CLOPTON et al., Appellants, v. HARRY
CHANDLER et al., Respondents.

CORPORATION—ELECTION OF BOARD OF DIRECTORS—TIME OF CLOSING
OF POLLS—CONSTRUCTION OF BY-LAW—AUTHORITY OF ELECTION
COMMITTEE.—Where a by-law of a corporation provides that the
secretary, treasurer, and auditor of the corporation shall compose
the committee on elections, and that it shall be their duty to make
all arrangements therefor, with full power to determine all questions
touching the qualification of voters, validity of proxies, and the
acceptance and rejection of votes, they, and not the board of direct-
ors, possess the *sole* right to determine as to how long the polls shall
be kept open to entitle the shareholders to vote their stock, and in
the absence of an abuse of discretion their action in such regard will
not be disturbed by the courts.

ID.—KEEPING OF POLLS OPEN BEYOND PUBLISHED TIME—DISCRETION
NOT ABUSED.—Under such by-law, it is not an abuse of discretion
for an election committee to keep the polls open for an elec-
tion of directors of the corporation from 10 o'clock A. M., Janu-
ary 14th, to 12 o'clock noon, January 15th, pursuant to an announce-
ment made hours before the time when the polls were closed, not-
withstanding that the published notice of election recited that the
polls would close at 6 o'clock P. M. on the fourteenth day of Janu-
ary, and notwithstanding that by the keeping open of such polls
the committee was thereby enabled to cumulate enough votes on a
certain candidate to secure his election, which would have been other-
wise had the polls closed at the published hour.

ID.—CONDUCT OF ELECTION OFFICERS—CUMULATION OF VOTES ON CAN-
DIDATE.—It is not illegal for such a committee to exercise their
persuasive powers upon certain stockholders to secure votes for a
contesting director, notwithstanding that in so doing they were ac-
tuated by a desire to retain their positions in the corporation.

ID.—LEGAL ACT—MOTIVE IMMATERIAL.—Where an act done is not il-
legal, the motive which prompts the doing thereof is immaterial.

ID.—ACTION TO SET ASIDE CORPORATION ELECTION—PLEADING—COM-
PLAINT SUBJECT TO DEMURRER.—In a proceeding brought under sec-
tion 315 of the Civil Code to set aside the election of a director
of a corporation, or any other election held by the corporation, the
sufficiency of the complaint may be raised by general demurrer.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   John M. York, Judge.

The facts are stated in the opinion of the court.

Joseph Scott, J. B. Joujon Roche, A. G. Ritter, and Thomas Ball, for Appellants.

Flint & Jutten, O'Melveny, Stevens & Millikin, and Walter K. Tuller, for Respondents.

SHAW, J.—The purpose of this proceeding, brought under section 315 of the Civil Code, was to set aside the election of the defendant Harry Chandler as a director of the Los Angeles Investment Company, a corporation, and in place of Chandler to have one I. J. Muma declared elected as such director. A general demurrer interposed by defendants to the second amended complaint was sustained, and plaintiffs declining to further amend, judgment was entered in favor of defendants. The appeal is upon the judgment-roll.

Stripped of a vast amount of surplusage, conclusions, and matter that in no event could be deemed material, it appears from the complaint that the Los Angeles Investment Company is a corporation created under the laws of California, having an authorized capital of five million dollars with shares of stock of the par value of one dollar per share, of which there was issued and outstanding at the time of the election three million six hundred thousand shares, distributed (as stated in the briefs of the attorneys for the respective parties) among some eighteen thousand stockholders, including the plaintiffs herein; that the by-laws provide for the holding of annual stockholders' meetings on January 10th of each year, unless the same be a holiday, and then on the succeeding day, and in case of failure to complete the election or to complete other business presented for consideration, those present may adjourn from time to time until the same is accomplished; that "the annual meeting shall be called by a notice printed in such newspaper, published in Los Angeles, county of Los Angeles, as the directors may direct, for at least two weeks next preceding date of meeting, and by notice hereafter provided for." It appears that in due time the board of directors caused to be duly published a notice convening said stockholders' meeting at the office of the company at the hour of 10 o'clock A. M. on Monday, January 11, 1915, in which notice it was, in accordance with a resolution

adopted by the board of directors, stated that "the polls will remain open until 6 o'clock in the afternoon of said Monday, January 11, 1915." The by-laws further provide: "Article XII. Committee on Elections. The secretary, treasurer and auditor (or in the absence of any one the remaining two) shall compose a committee on elections, and it shall be their duty to make all arrangements therefor, pass upon all proxies, provide for the complete registering of proxies, counting of ballots, preservation of the records of election and the preservation of the ballots for thirty (30) days after an election. All questions touching the qualification of voters, validity of proxies and the acceptance or rejection of votes shall be decided by said committee on elections. Said committee on elections shall cause to be prepared a register of voters, which shall be in such form as it shall determine, but shall contain among other things the name of the shareholder, the number of shares he is entitled to vote, the name of the proxy, and other matters that in the judgment of said committee on elections said register shall contain." That by virtue of said provision H. V. Davis, Stoddard Jess, and Benjamin F. McLouth constituted said committee; that prior to the commencement of said election Joseph Scott was, by resolution duly adopted, added to and made a member of said committee on elections; that in accordance with said notice calling said meeting the stockholders of the corporation convened at the time and place designated therein for the purpose of holding their annual meeting and electing a board of seven directors for the ensuing year; that, a quorum being present, the meeting was by a vote of the stockholders, for the purpose of registering and checking proxies, duly adjourned from day to day until 10 o'clock A. M. of January 14th, at which hour the secretary of the meeting announced that more than a majority of the stock necessary to constitute a quorum was represented, and thereupon the balloting for the election of seven directors of the company began; that it was "*understood*" by all the stockholders present that said balloting when commenced would cease and the polls would close at the hour of 6 o'clock P. M. on said fourteenth day of January, in accordance with the resolution of the board of directors as expressed in the notice calling said meeting. Both Chandler and I. J. Muma were candidates for director, and it is alleged that according to the vote cast up to 6 o'clock P. M. on

January 14, 1915, at which hour plaintiffs claim the polls should have closed, Chandler received 409,200 votes, and Muma received 2,129,449; that hence had the polls closed at said hour, Muma, and not Chandler, would have been elected as director; that H. V. Davis, secretary of the corporation, Benjamin F. McLouth, the auditor, and Austin O. Martin, who was manager thereof, the first two being members of the committee on elections, became convinced that if the polls closed at 6 o'clock P. M., the ticket which did not include the name of Chandler would be elected, and thereupon H. V. Davis, acting on behalf of the committee on elections, announced that the polls would remain open and balloting would continue until the hour of 10 o'clock A. M., January 15, 1915; that the polls were kept open through the night and until 10 o'clock A. M. the next day, prior to which time said Davis, as a member of said committee, announced that the polls would remain open and balloting continue until the hour of 12 o'clock noon of said day; that stockholders who were present and representing a majority of all the outstanding stock of said corporation, protested against extending the time for balloting and demanded that the polls be closed at 10 o'clock; that the chairman refused to recognize a motion duly made to close the polls and ignored an appeal from the decision of the chair; that the polls were kept open until the hour of 12 o'clock noon on said January 15, 1915; that neither at the hour of 5 o'clock P. M., January 14th, nor at the hour of 10 o'clock A. M., January 15th, were there any stockholders present at said meeting waiting for an opportunity to cast their votes; that said extensions of time were unreasonable and unnecessary and made for the purpose of thwarting the will of the majority of the stockholders by defeating what was termed the "compromise ticket" containing the name of Muma, and for the purpose of securing the election of Chandler, who, with others elected on the so-called "administration ticket," constituted a majority of the board and insured the retention of Davis, Martin, and McLouth as secretary, manager, and auditor, respectively, of said corporation; that said extensions of time were not made by the stockholders present, nor were they made by the said committee on elections or a majority of the members thereof, but that said committee never took action with reference to said extensions; that between the hour of 6 o'clock P. M. on

January 14th and the hour of 12 o'clock noon on January 15th, said Davis, Martin, and McLouth and their agents and representatives secured from stockholders the cumulative vote of 286,258 shares of the capital stock in favor of Chandler; that as a result of such action it was found, and so announced by the committee in charge of the election upon a counting of the votes, that Chandler had received a vote largely in excess of that cast for Muma, whereupon he was by the chairman declared elected as a director; that thereupon Joseph Scott, as a member of said committee on elections, presented a report to the effect that Muma had been elected, but the chairman refused to entertain a motion for the adoption of said report so presented by Scott.

The contention as made by appellants is novel in that it is not claimed that plaintiffs or any other persons were prevented from voting their stock by reason of the polls being closed, or that any persons voting stock were not the owners thereof and entitled to vote the same. On the contrary, it is insisted that by reason of the action of the committee in keeping the polls open a large number of stockholders, holding nearly three hundred thousand shares, were given the opportunity to express their choice for directors, when, had the polls been closed at an earlier hour, they would have been deprived of so doing. As we understand appellants, they claim that these votes should not have been received for two reasons: First, they were tendered after 6 o'clock P. M. of the day to which the stockholders had by vote adjourned the meeting for the purpose of ascertaining the presence of a quorum; and, second, a large number, if not all the stockholders so voting, did, at the request and pursuant to the suggestions and advice of one Martin, manager of the company, and Davis and McLouth, secretary and auditor, respectively, of the company, cumulate their votes in favor of Chandler. As to the first proposition, it is true the board of directors fixed the hour of 6 o'clock P. M., January 11th, as the time when the polls should close. It appears there were eighteen thousand shareholders; hence it was physically impossible to ascertain the presence of a quorum, in person or by proxy, and conduct the election in so short a period. Nor does it appear that when the adjournments were ordered such action contemplated the closing of the polls at 6 o'clock P. M. on January 14th. No reference was made in the motion

to any time when the polls should close. Plaintiffs allege that it was so "understood," but in the absence of any resolution so to do, or indeed any reference made in the motion as to when the polls should close, the statement of the pleader as to what was in the minds of eighteen thousand persons is a conclusion entitled to little if any consideration. Aside from this, however, the board of directors had no power to fix the time when the polls should close. Its duty was limited to the publishing of notice stating the time when and place where the meeting would be convened. Until a quorum was in attendance the stockholders *present,* as provided in the by-laws, were authorized to adjourn the meeting from day to day, as was done. When the presence of such quorum was ascertained at 10 o'clock on January 14th, the committee on elections, pursuant to the by-laws, took charge of and superintended the balloting, which continued uninterruptedly from 10 o'clock, January 14th, until noon, or a few minutes thereafter, January 15th. By virtue of the by-law entitled "Committee on Elections," hereinbefore quoted, it was the duty of the committee, regardless of motions made to adjourn or to close the polls, to keep them open for such reasonable period of time as it deemed necessary to enable the shareholders to vote their stock. Having such power, it did not abuse its discretion in keeping them open pursuant to an announcement publicly made hours before the time when they were closed. As said in the *Matter of Chenango County Mutual Ins. Co.,* 19 Wend. (N. Y.) 635: "It is to be regretted, as well in regard to the interests of these institutions as in respect to the public good, that the time within which the polls of election for directors shall be kept open, had not been specifically defined; as it is, great abuses may be practiced, and the very opportunity that exists will lead to their occurrence." So here, a wiser plan would be the enactment of a by-law specifying the number of hours the polls shall be kept open. The stockholders, however, by enacting this by-law, have seen fit to confer upon a committee consisting of the secretary, auditor, and manager of the corporation the power to determine the period during which the polls shall be open for the reception of votes, and empowered it, in the exercise of a reasonable discretion, to decide all questions as to "the acceptance or rejection of votes." (*People* v. *Albany & S. R. R. Co.,* 55 Barb. (N. Y.) 344; 3

Clark and Marshall on Corporations, sec. 649c; Cook on Corporations, sec. 606; Thompson on Corporations, 2d ed., sec. 913.)

Complaint is made that the committee took no formal action. Since, however, the committee received and counted the votes so cast, it must be presumed that the action of the secretary in making the announcement pursuant to which the polls were kept open, was with the approval of the committee, or at least a majority thereof. "Mere irregularities will not render the proceedings invalid, if the substantial rights of stockholders or members are not affected." (Clark and Marshall on Corporations, sec. 649a.) While not necessary to a consideration hereof, we may state that the action whereby Scott was added to the committee was without authority and cannot be deemed to either repeal, change, or modify the by-law which designated certain officials as constituting the committee.

The second contention is without merit. It does not appear that Martin, Davis, or McLouth did any illegal act in exercising their persuasive powers upon stockholders to secure votes for Chandler. Conceding that in so doing they were actuated by a desire to retain their positions in the corporation, nevertheless they did nothing illegal and nothing which the plaintiffs, actuated by what may be conceded a less selfish motive, might not, having equal opportunity, have done. It is not the motive which prompts the act, but the legality of the act itself with which the law is concerned. (*Boyson* v. *Thorn*, 98 Cal. 578, [21 L. R. A. 233, 33 Pac. 492].) The fact that they were better able to make a correct estimate or guess of the vote cast, and "in a position to know how to nicely cumulate these votes so as to elect said Harry Chandler," furnishes no just reason for setting aside the will of the majority of the stockholders voting. Since the stockholders who cast their votes had the right to cumulate the same in favor of Chandler, it is immaterial that they were influenced in so doing by suggestions of outsiders, other stockholders or officers of the corporation. (*Dulin* v. *Pacific Wood & Coal Co.*, 103 Cal. 357, [35 Pac. 1045, 37 Pac. 207].)

Appellants next insist that a complaint filed under section 315 of the Civil Code, is not subject to a general demurrer. That section provides: "Upon the application of any person or body corporate aggrieved by any election held by any cor-

porate body, the superior court of the county in which such election is held must proceed forthwith to hear the allegations and proofs of the parties, or otherwise inquire into the matters of complaint, and thereupon confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice.'' The law does not require the doing of an idle act, and since it is the allegations contained in the ''application'' of the ''party aggrieved'' that are to be heard, the application, to entitle it to be heard, must show that such party is aggrieved; that is, prejudiced in his substantial rights. However illegal the election might be, one not a stockholder could not be aggrieved by reason thereof. So likewise, if the allegations, admittedly true, contained in the application would not justify any interference with the election, it would be idle for the court to sit, for days perhaps, making an inquiry that could serve no purpose. While the question of the sufficiency of a complaint might be raised in some other manner than by filing a demurrer, it seems to be an appropriate pleading to raise the question.

Our conclusions are: 1. That in a proceeding commenced under section 315 of the Civil Code, the complaint is the subject of a general demurrer; 2. That where a by-law of a corporation, as here, designates certain officers of the corporation as inspectors of an election, giving them the power specified therein, they possess the sole right to determine when the polls shall close and, in the absence of an abuse of discretion, their action in this regard will not be disturbed by the courts; 3. That there was no abuse of discretion by such election committee or inspectors in keeping the polls open from 10 o'clock A. M., January 14th, to 12 o'clock noon, January 15th, for the reception of votes; 4. That while propriety dictates that such inspectors should not interest themselves in securing votes for either contesting candidate, nevertheless the fact that they suggest and advise stockholders to cumulate their votes in favor of a successful candidate, furnishes no legal cause for setting aside such election; and, 5. That where the act done is not illegal the motive which prompts the doing thereof is immaterial.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.