[Civ. No. 7021.   First Appellate District, Division One.—August 28, 1930.]

COMMERCIAL BUILDING COMPANY (a Corporation), Respondent, v. BARNEY LEVY, Appellant.

Owen D. Richardson and Donald B. Richardson for Appellant.

Louis Oneal and C. E. Luckhart for Respondent.

PARKER, J., *pro tem.*—This is an action to recover money alleged to be due upon a subscription for the capital stock of the plaintiff corporation. From a judgment for plaintiff the defendant appeals. The agreement sued upon is as follows:

"For the purpose of erecting a modern building on the so called 'Music Hall' property on North First Street in San Jose, California. I hereby subscribe for five shares of the capital stock of the Commercial Building Company (a corporation organized under the laws of the State of California and having a capital stock of three hundred thousand dollars divided into three thousand shares of the par value of $100. each) and I agree to pay for such shares so subscribed by me one hundred (100) dollars per share, payable as follows: On or before December 1, 1924.  I under-

stand that the terms, conditions and provisions contained in the amended permit issued by the Commissioner of Corporations of the State of California, a copy of which is printed on the reverse side of this subscription are made a part hereof.

"Dated this 10th day of March, 1924.

"Name (signed) BARNEY B. LEVY."

On the reverse side appeared the amended permit of the corporation commissioner. The salient points of this permit are that the corporation was granted permission to sell 1150 shares of its capital stock in exchange for $115,000 cash, lawful money of the United States heretofore advanced by appellant. Also to sell and issue 850 shares of its capital stock at par for cash lawful money of the United States for the uses and purposes recited in the application. This amended permit was dated July 12, 1922. It is admitted that the stock involved and for the payment of which recovery was had is embraced in the 850 shares last referred to. It is admitted further that in pursuance of the subscription the stock was actually issued in the name of defendant and was, together with the subscription agreement, deposited as a pledge on a loan made to the corporation. It is further a fact that the demand on the defendant for the money claimed was accompanied with a notice that the stock had been so issued to him and that he would make the payment direct to the lender bank where he would receive his stock.

Among other grounds of appeal it is the claim of the appellant that the sale, not being a sale for cash, under the terms of the amended permit, was void and that no recovery can be had on the alleged agreement of subscription. Appellant relies upon the following cases: *Domenigoni* v. *Imperial Live Stock Co.*, 189 Cal. 467 [209 Pac. 36]; *Gridley* v. *Tilson*, 202 Cal. 748 [262 Pac. 322]. Indeed, it would seem that these cases are decisive of the present appeal, without further argument. However, respondent contends that these cases are inapplicable. The arguments supporting the contentions are not convincing. It is argued that the cited cases apply only in cases where promissory notes are taken in lieu of cash, but that where there is a promise to pay cash at some definite future date, the sale is really a sale for cash, the payment being deferred. It is a distinction without a differ-

ence. A promissory note, in its essence, is merely a written promise to pay money at a date certain. When the courts have definitely held that under the provisions of the Blue Sky Act a sale of stock, pursuant to a permit to sell for cash, cannot be sold on a written promise to pay, it would seem only too clear that the effect of the decisions could not be avoided by substituting an oral promise to pay. And if respondent then contends that no oral promise to pay is involved, but predicates the obligation upon the written subscription, then, perhaps minus the attributes of negotiability, the written promise possesses all of the features condemned in the cited cases. We have read and re-read the argument of respondent, but, irrespective of the approach, the conclusion remains the same, namely, that the stock was sold to defendant on terms other than cash. No matter how the facts are turned or from what viewpoint we approach the question, we find a complete answer in the cited cases. Nor are we prone to draw any close lines of differentiation. The purpose of the Corporate Securities' Act was and is to protect purchasers of stock or securities. Respondent professes the honesty of its intentions and the fair dealing surrounding all of its activities and argues along certain lines of policy and wisdom. The fairness of its intent is immaterial and the question of policy has been determined by the legislative enactment. Those evading the law under a cloak of honesty and good faith may accomplish more harm than those notoriously criminal in their undertakings. The policy of the enactments is to protect buyers from possibility of injury, as far as the law will permit. Irrespective of the integrity of the organizers or directors of a corporation the law must be obeyed. If under a permit to sell for cash only some of the stock should be sold for cash and some on deferred payments, irrespective of the contract, those who purchased for cash might find the assets of the corporation tied up in some project, wherein the directors had invested in reliance upon the unfulfilled promises with the result that further headway was impossible and the funds invested lost. In fact, many situations harmful to the cash investor might follow. Without attempting lengthy quotation from the cited cases we see no escape from the conclusion that the present transaction comes clearly within the doctrine therein announced.

It may be added that the act referred to herein as the Corporate Securities Act may be found in Statutes of 1917, page 673, and acts amendatory thereof in General Laws of California, 1923, Part One, Act 3814.

Other points raised it becomes unnecessary to discuss.

The judgment is. reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 27, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 27, 1930.