[Civ. No. 860. Fourth Appellate District.—August 1, 1931.]

COAST AMUSEMENTS, INC., (a Corporation), Respondent, v. F. L. STINEMAN et al., Appellants.

Newlin & Ashburn and Clive W. Johnson for Appellants.

Samuel J. Crawford for Respondent.

GRIFFIN, J., *pro tem.*—This is an action to recover the par value of 8,500 shares of respondent's stock alleged to have been subscribed for by appellants and for which they failed and refused to reimburse the company.

The court found that respondent was a corporation duly organized and existing under the laws of the state of California; that on or about July 7, 1925, appellants, together with W. E. Knotts, F. W. Becker and L. H. Hendricks, entered into an oral agreement among themselves to form the respondent corporation and subscribe for certain stock, and pursuant thereto articles of incorporation were prepared and signed by appellants and W. E. Knotts in which articles they subscribed for the capital stock as follows: F. L. Stineman, 4,000 shares; Charles Paige, 4,500 shares; F. L. Stineman and Charles Paige jointly, 1500 shares in the name of the High Boy Coaster Co.; F. W. Becker subscribed for 3,500 shares, all of the par value of one dollar each; that within thirty days thereafter the corporation was duly incorporated and a charter was granted by the secretary of the state of California, said corporation was duly organized, commenced the operation of its business and appellants became officers and directors thereof; that on August 15, 1925, an application was made to the corporation commissioner for a permit to issue the capital stock of said corporation and pursuant thereto a permit was regularly granted authorizing the corporation to issue 20,000 shares of its capital stock *for cash* so as to net the corporation the full amount of the selling price; that after granting said permit, appellants, without the knowledge or consent of the board of directors or officers of the corporation, issued to F. L. Stineman 4,000 shares, to F. L. Stineman and Charles Paige jointly, 1500 shares of the capital stock and that appellants did not pay for this stock at the time they accepted delivery thereof. (The court failed to find that appellant Charles Paige, individually, had issued to him 4,500 shares of stock for which he failed to pay.)

The court further found that thereafter appellants negotiated these shares of stock to F. W. Becker, an innocent

purchaser who had no knowledge of the fact that this stock had been issued without cash having been paid therefor, and who was without knowledge of any infirmities pertaining to its issuance, as is more particularly related in the case of *Becker* v. *Stineman et al.* (Civil No. 859), *ante,* p. 740 [2 Pac. (2d) 444], the opinion in which is this day filed.

The court further found that appellants had returned to the corporation the 1500 shares of stock issued to themselves jointly. Judgment was entered against appellant Stineman for the sum of $4,000 and against appellant Charles Paige for the sum of $4,500, together with interest and costs.

Appellants contend that the evidence does not support the findings of the trial court. As an affirmative defense they contend that Knotts, Becker, and appellants entered into an agreement to construct the place of amusement, by the terms of which, Becker was to furnish $3,500 in cash, and Knotts $5,000 in cash. Appellant Stineman was to contribute $5,000 toward the purchase of cars which were to be used by the corporation, and also to pay other small bills. Appellants contend this money, material and services were furnished subsequent to the making of the agreement and prior to the issuance of the permit. Appellant Paige contends that he paid for $2,950 worth of steel that went into the construction of the place of amusement, $1300 in cash toward the purchase of the cars, and in addition, paid certain small bills, waived his commission which he would ordinarily receive on the sale of the cars, and contributed approximately four or five weeks' time in supervising the construction of the ride. Appellant Stineman contends that he contributed $5,000 toward the purchase of the cars and paid other bills of the approximate amount of $500. And that by reason thereof they were entitled to receive as a credit the value of services performed, moneys paid and advanced, as well as the value of property furnished to the corporation. Appellants further contend that if the stock certificates previously issued by respondent to ·them were issued contrary to the terms of the permit and were void then respondent corporation was *in pari delicto* with them and not entitled to any relief.

The place of amusement was substantially completed and ready for operation by the last of August, 1925. During the month of December, 1925, stock certificates were issued

and delivered to all of the organizers in accordance with their joint subscriptions. On July 20, 1926, their permit to sell stock was suspended by the commissioner of corporations and the corporation has since been without authority to issue its capital stock.

Respondent contends that a recovery may be had on either of two theories: 1st, that the stock issued and delivered was void, but having come into the hands of an innocent purchaser the corporation was estopped from denying its validity, therefore appellants would be liable to the corporation for the value thereof; 2d, that if the stock was issued in violation of the permit and was void, appellants' subscription in the articles of incorporation, for the stock above subscribed, was an enforceable obligation on which the corporation could maintain an action to recover a judgment for the par value of the stock for which they had subscribed, and that as the permit required the payment to be made in cash no credit could be allowed as an offset against the judgment.

Answering respondent's first contention, the evidence conclusively establishes that the stock was issued in violation of the permit and accordingly void. In view of this fact and the facts stated in the companion case of *Becker* v. *Stineman et al.*, we see little merit or justice to the claim which would permit respondent corporation to recover a judgment for the full price of stock issued which was void. The subsequent assignment thereof to Becker would not make this stock valid. The value of the stock issued was not proven by any evidence pointed out to this court. Therefore the evidence would not support a judgment for its value. There is no presumption that the par value of the stock is its market value. (*Castle* v. *Acme Ice Cream Co.*, (Cal. App.) 279 Pac. 1011.)

In answer to respondent's contention, if the stock subscription specified in the articles of incorporation was an enforceable obligation, and the stock which was issued thereunder was void as contended, then respondent is not now in a position to deliver over to these appellants upon payment of this judgment the stock so subscribed for, by reason of the fact that the corporation commissioner has revoked their permit to now issue or sell stock in any form.

Section 12, California Corporate Securities Act, Deering's General Laws, 1923, Act 3814 as amended, reads as follows: "Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void, etc."

It would indeed be a curious anomaly if a corporation could maintain an action upon a stock subscription agreement, recover judgment thereon and at the same time be legally incompetent to issue the stock. (Sec. 25, Cal. Corporate Securities Act, Deering's Gen. Laws, 1923, Act 3814.)

■ Appellants contend that if recovery was had upon the theory of an unpaid stock subscription that respondent has failed to allege or prove compliance with section 331 et seq. of the Civil Code.

The evidence discloses some written agreement entered into on the first day of July, 1925, between W. E. Knotts, F. W. Becker, F. L. Stineman and Charles Paige specifying that the interests of the parties in the "Skooter" were to be paid as follows: "W. E. Knotts, 1/4 interest or $5,000; Charles Paige, 1/4 interest or $5,000; F. L. Stineman, 1/4 interest or $5,000; F. W. Becker, 3/16 interest or $3,500; Charles Paige, 1/16 interest or $1500; and that there was to be no more cost to any of the above-mentioned parties for the completion of the skooter other than their initial payment; and that the board of directors would consist of the above mentioned, excluding Charles Paige who was to act as treasurer.

From the finding of the trial court the only right or recovery under a subscription agreement is the purported subscription agreement set forth in the articles of incorporation. Therefore it will not be necessary to consider the agreement above referred to, but in passing we might say that it lacks the necessary elements to make it an enforceable contract without proving compliance with section 331 et seq. of the Civil Code.

■ The only provision in the articles of incorporation relating to the subscription of stock reads as follows: "That the amount of said capital stock which has been actually subscribed is twenty thousand ($20,000) dollars, and the following are the names of the persons by whom the same has been subscribed.

"Name of Subscriber      Number of Shares      Amount
      F. L. Stineman            5000             $5,000
      Charles Paige             6500              6,500
      F. W. Becker              3500              3,500"

The articles of incorporation were signed by appellants and W. E. Knotts.

We are of the opinion that the terms above set out merely bind appellants to take the number of shares set opposite their names but contain no promise to *pay on demand* or *at any specified time* the amount of the subscription. Under an unbroken line of decisions a call or assessment under section 331 of the Civil Code was necessary in order to render the appellants liable. (1 Thompson on Corporations, sec. 1185; *Ventura etc. Ry. Co.* v. *Hartman,* 116 Cal. 260 [48 Pac· 65]; *Marysville Elec. Light etc. Co.* v. *Johnson,* 93 Cal. 538 [27 Am. St. Rep. 217, 29 Pac. 126]; *San Joaquin Land & Water Co.* v. *Beecher,* 101 Cal. 70, 35 Pac. 349]; *Los Angeles Athletic Club* v. *Spires,* 166 Cal. 173 [135 Pac. 298]; *Bell Development Co.* v. *Marshall,* 35 Cal. App. 324 [169 Pac. 717].) The agreement to subscribe and take the shares of stock set opposite their names bound them as stockholders in the corporation but not to pay for the stock otherwise than assessments therefor might be legally made. (Cook on Stocks and Stockholders, sec. 105.)

It is not necessary to allege a tender of a stock certificate, but "a readiness and willingness, however, to deliver the certificates must be alleged in the complaint in actions for the whole amount subscribed, or to enforce payment of the final installment of the amount subscribed". (14 Cor. Jur. 658, sec. 1016; *Seymour* v. *Jefferson,* 71 Minn. 367 [74 N. W. 149].)

Respondent neither alleged nor proved compliance with section 331 et seq. of the Civil Code nor alleged nor proved ability to issue valid stock on payment of the judgment.

Appellants filed a cross-complaint in the above-entitled action seeking to recover from the corporation the value of labor and material contributed to the corporation prior to its incorporation, but during the trial of the case appellants dismissed their cross-complaints for reasons not stated in the record.

In the case of *Klinker* v. *Guarantee Title Co. of Long Beach,* 98 Cal. App. 469 [277 Pac. 177], an action to recover

money paid to a corporation for stock issued in violation of a permit, it was held that upon payment of the money the obligation arose either to issue to plaintiff value received in the shape of valid stock, or lacking authority to do so, to return the money to him. This is supported by *National Stone Corp.* v. *Voorheis,* 93 Cal. App. 738 [270 Pac. 286].

We believe the decision in *Los Angeles Athletic Club* v. *Spires, supra,* sufficiently supports appellants' contention. "The only question demanding consideration that is presented by this appeal may thus be stated: Where a stock subscription contract is silent upon the question, may the directors of the corporation, upon call or demand, enforce against the subscriber the full payment of the subscription and enforce his delinquency by an action in *assumpsit,* as could unquestionably be done at common law, or do the sections of the Civil Code, 331 et seq., enter into and become a part of such contract, with the result that calls or assessments for unpaid subscriptions can be made only upon the terms and in the manner and form in those sections prescribed? This precise question has never before been presented to this court for decision. We are of the opinion that the sections referred to do enter into and become a part of the subscriber's contract, with the result that, in the absence of provision to the contrary therein, calls or assessments by the corporation for unpaid subscriptions can be made only upon the terms and in the manner and form in those sections prescribed. A careful consideration of the opinions of this court relied upon by appellant satisfies us that there is nothing therein inconsistent with this conclusion. It is still, of course, permissible for the subscriber, by terms expressed in his contract of subscription, to modify or waive the provisions of the code clearly assigned for his benefit, but unless the subscriber has done so he will be held to have entered into the subscription contract in contemplation of the protection which the code provisions afford him."

For reasons above stated the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.