[Civ. No. 859.   Fourth Appellate District.—August 1, 1931.]

F. W. BECKER, Respondent, v. F. L. STINEMAN et al., Appellants.

Newlin & Ashburn and Clive W. Johnson for Appellants.

Samuel J. Crawford for Respondent.

GRIFFIN, J., *pro tem.*—This is an action for damages arising out of the sale of 8,500 shares of the capital stock of Coast Amusements, Inc., under circumstances more particularly described in this and in the companion case of *Coast Amusements, Inc., v. F. L. Stineman* (Civil No. 860), *post,* p. 746 [2 Pac. (2d) 447]), this day decided.

Respondent and appellants entered into a written agreement to operate a place of amusement at the Ocean Park Pier in Santa Monica. Appellants furnished certain materials, labor and cash. Subsequently they incorporated, each subscribing for certain shares of stock as follows: F. W. Becker, 3,500 shares; W. E. Knotts, 5,000 shares; F. L. Stineman, 5,000 shares; and Charles Paige 6,500 shares, according to the interest each had, or was to have, in the business under some oral preorganization agreement. Respondent Becker did not sign the articles of incorporation.

After incorporation an application was made to the corporation commissioner for a permit to sell 20,000 shares of stock at a par value of $1 per share. This permit was granted on condition that the sale price would be *for cash.* The board of directors and officers included appellants and respondent. They proceeded to issue to themselves shares of stock in accordance with their respective interests as follows: F. L. Stineman, 4,000 shares; Charles Paige 4,500 shares; F. W. Becker, 3,500 shares; W. E. Knotts, 5,000 shares; L. H. Hendricks, 1500 shares; the consideration for the issuance of appellants' stock being cash and materials furnished and services performed prior to the incorporation and the granting of the permit. The books of the corporation do not show any money paid in by any of the incorporators.

It appears from the application to the corporation commissioner to sell stock that no mention was made that it was the intention of the applicants to issue stock to the incorporators in payment of moneys advanced, materials furnished, etc., consequently the permit provided "that the stock may be issued and disposed of for *cash only*". It was stipulated at the trial that all of the above-mentioned stock was issued in violation of the permit and was void *ab initio*.

Respondent contends that he was not present at the meeting in which appellants issued to themselves the shares of stock referred to but was out of the state and that he paid his $3,500 for the stock for which he had subscribed subsequent to the incorporation but prior to the issuance of the permit. He admits that he knew his money was to be used in purchasing materials for the erection and maintenance of the "Skooter".

On the twenty-first day of December, 1925, appellants traded their 8,500 shares to respondent Becker for real estate of the value of $8,500, Stineman turning 4,000 shares and Paige 4,500. The title to the real estate was taken in the names of appellants jointly. The real property was subsequently disposed of. The stock transferred to respondent was subsequently reissued by the corporation to respondent and his wife who enjoyed the dividends earned thereon to the extent of $1997.50, voted the stock thus acquired and also that acquired by Becker under his subscription agreement. The corporation subsequently brought an action in the name of the corporation against appellants to compel them to pay for the stock for which they had subscribed, to wit: F. L. Stineman, 5,000 shares, and Charles Paige 6,500 shares. Respondent was made manager by the new board of directors which consisted of himself, his wife, and Mr. Knotts, and his salary was fixed at $75 per week.

The record discloses that respondent was vice-president of the corporation from its inception. He testified that he was not at the meeting at which the officers were elected although the minutes of the meeting of August 15, 1925, show he was duly elected vice-president and that he then nominated W. E. Knotts treasurer and subesquently nominated L. H. Hendricks secretary. At this meeting a motion

was made that the corporation apply for the permit to sell the 20,000 shares of capital stock of the corporation.

Respondent testified that he did not take any part in the management or control of the company except that he greased the cars and assisted in the management one or two days a week from October, 1925, until January, 1926, and was paid fifty cents an hour for his services; that he did not know whether Mr. Paige or Mr. Stineman paid anything for their stock as there were no records kept by the corporation showing any payment or credits given them; that he was not allowed to see the books and did not find out until February, 1926, that there were only books of operation kept and that there had been no books showing cash received or moneys disbursed. Such books as there were remained in the custody of Mr. Knotts, Hendricks and Stineman. Mr. Stineman was signing the checks; that he did not know how much the skooter cost. Appellants testified that it cost $17,000. Respondent testified further that he was satisfied and that he did not intend to rescind the sale if appellants could satisfy the corporation commissioner as to the value of materials, etc., that were furnished to the corporation by appellants and make the stock issued valid under a proper permit.

In February, 1926, respondent discovered that the stock issued to Stineman and Paige was issued in violation of the permit and was consequently void. He then instituted this action to recover the value thereof. The court found for respondent and against appellants for the full value of said stock in the sum of $8,500, deducting therefrom the amount of dividends received by respondent during this period.

Appellants contend, first, that respondent was *in pari dilicto* with them and therefore not entitled to any relief, and second, that the transfer of the invalid stock operated as an equitable assignment of appellants' interest in or claim against the corporation.

There is no doubt, under the stipulation and finding, that the stock issued is void, therefore, the consideration for the property exchanged failed. Respondent would therefore ordinarily be entitled to recover the property or its value.

The case cited by appellants, *Michell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 Pac. 418], which was an action

by certain directors against the corporation for the rescission of a deed wherein plaintiffs deeded certain mining property to the corporation in exchange for stock to be issued, believing, upon advice of counsel, that a permit so to do was not necessary, the court held, under the facts in that case and by reason of the participation of plaintiff in the control and management of the business, that it would be absurd to conclude that the land owners, directors of the corporation intended to perpetrate a fraud on themselves by directing the corporation to do so and so that it would render it inequitable to affirm the rescission and order a cancellation of the deed; that by reason of the participation of. plaintiff in the enterprise from its inception, including especially his participation in the acceptance by the corporation of the terms of the promotion contract upon the issuance of stock, unlawfully, it would place him *in pari delicto* with the corporation under the doctrine of the case of *Domenigoni* v. *Imperial Live Stock etc. Co.,* 189 Cal. 467 [209 Pac. 36], and no relief should be accorded him on that ground alone. Several other reasons were assigned for denying plaintiff's right to rescind. If the facts as related by appellants were found to be true, we believe the case above cited would receive favorable application.

The trial court found that the two appellants while directors of the company caused said permit to be requested and issued; that the 8,500 shares were issued by them to themselves in violation of the permit and that they knew at the time of the issuance that they were being issued in violation of the permit; that respondent had no knowledge of the business affairs or transactions of the company or that appellants had issued said shares of stock to themselves in violation of the permit; that respondent received nothing of value for the real property traded to the appellants and that the consideration failed. The evidence offered by appellants contradicts the testimony of respondent as to his participation in the organization and proceedings of the company, purchase of stock, and his knowledge of the various transactions. The record before us, however, is quite convincing in favor of appellants' contention. The court made a finding, apparently based on respondent's testimony, which if true, will support its finding. This court cannot disturb such finding on appeal, therefore, it cannot be said

that the actions of respondent are similar to the facts set forth in the case of *Michell* v. *Grass Valley Gold Mines Co., supra.* We cannot therefore hold that the parties were *in pari delicto.*

■ The second point raised is that the assignment of the shares to respondent carried with it any right of action appellants might have against the corporation to reimburse them for the value of the stock which they issued without authority. We are of the opinion that an assignment of the shares under the circumstances here related did not carry an equitable assignment of such right. The evidence discloses that the amount paid into the corporation by appellants and the value of materials and labor furnished is not fixed, certain and definite. There was evidence that appellants had not paid in the full value of their stock in cash or its equivalent, therefore, if there was an equitable assignment of appellants' interest in a right of action against the corporation, respondent would not know and could not know the amount thereof.

If respondent did institute an action thereon against the corporation under such a claimed right it may develop that the actual amount paid in was much less than $8,500, therefore respondent would be forced to assume a loss of that difference. We see no merit in this contention. Under the authority cited (*Klinker* v. *Guarantee Title Co. of Long Beach,* 98 Cal. App. 469 [277 Pac. 177, 180]) it was held that in an action to recover money paid for stock issued without a permit from the corporation commissioner "the void certificates of stock were not even choses in action, for, notwithstanding the alleged mistake of belief as to the validity of said certificates entertained by appellants and acquiesced in by respondent corporation . . . , the said certificates of stock would not have supported an action brought to recover money or value in the event of their transfer by the holder, because they were utterly worthless and void".

■ Based upon the findings of the court the evidence discloses facts similar to those in the case of *Hemmeon* v. *Amalgamated Copper Mines Co.,* 95 Cal. App. 400 [273 Pac. 74], which was an action to recover from defendants on certain promissory notes issued by them in violation of a permit of the corporation commissioner. Defendant claimed

and cited authorities holding that while one who has received the benefit of an illegal private contract is estopped to plead its invalidity, such rule does not apply to contracts which are void as against public policy. The trial court there found that the respondent had no knowledge of the failure to obtain a permit, but it was argued that she must be presumed to have known the law and that the notes were void, and that having failed to demand proof of the existence of a permit respondent passively if not actually became a participant in violating the law. The court held that it was true that respondent must be presumed to have known the law requiring the possession of a permit as a prerequisite to the issuance and sale of securities, but it does not follow that she should be assumed to have known the fact that appellant had violated the law. Respondent was entitled to assume that the law had been complied with. In such a case the complaining party is protected, the prohibition being for his benefit and not being *in pari delicto* he is entitled to relief. (13 Cor. Jur., p. 501, sec. 443.)

It is the duty of the court in furtherance of justice to aid one not *in pari delicto* though to some extent involved in the illegality, but who, as here found, is comparatively the more innocent and to permit him to recover back the property or its value as the circumstances of the case may require. (*Hemmeon* v. *Amalgamated Mines Co., supra,* at p. 402.) No other points having been raised on appeal, the judgment of the trial court is affirmed.

Barnard, P. J., and Marks, J., concurred.