[Civ. No. 21734. First Dist., Div. One. Jan. 25, 1965.]

COLUMBIA ENGINEERING COMPANY et al., Plaintiffs and Appellants, v. ERNEST V. JOINER et al., Defendants and Respondents.

838

George B. White and Spridgen; Moskowitz, Barrett & Achor for Plaintiffs and Appellants.

Dermott, Maxwell & Hood and Richard B. Maxwell for Defendants and Respondents.

BRAY, J.*—Plaintiff appeals from judgment in favor of

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

defendants entered pursuant to section 631.8, Code of Civil Procedure.

QUESTIONS PRESENTED

1. Do sections 2236-2238, Corporations Code, apply to this type of action?

2. The validity of the election of corporate directors. This requires determination of whether the issuance of certain shares of corporate stock is valid, and whether laches, waiver and estoppel will lie to prevent a stockholder from attacking void stock.

Plaintiff Columbia Engineering Company (hereinafter referred to as plaintiff) is a copartnership comprised of the members of the family of Donald E. Stem. Prior to December 31, 1961, the Sebastopol Times and the Guerneville Times, weekly newspapers, were owned by defendants Ernest V. Joiner and Louise Bell Joiner (hereinafter referred to as defendants).

In March 1962, plaintiff and defendants obtained from the Commissioner of Corporations the right to form a closed corporation to be known as Joiste Publications, and a permit to issue stock therein. John Kaufhold, a certified public accountant selected by the parties, after examining the books and records of defendants' business, had prepared a balance sheet dated December 31, 1961. This showed defendants' business to have a net worth of $31,471.66 and liabilities of $27,170.75. The Corporation Commissioner's permit provided that 510 shares of the Joiste Publications stock was to be issued to defendants "for the assignment and transfer heretofore made of the business and assets described in its said application, subject to liabilities of $27,170.75 as of December 31, 1961." The stated value of each share of the capital stock was $61.70. The permit permitted the issuance to plaintiff of 162 shares of stock for the cancellation of Joiste Publications' indebtedness to plaintiff in the sum of $10,000 and the issuance to plaintiff of 328 shares on payment therefor at the price of $61.70 per share.

The stock was issued pursuant to said permit, 510 shares (51 per cent of the issued stock) to defendants and 490 shares (49 per cent of the issued stock) to plaintiff. The parties agreed that the corporation would be considered to have commenced business as of January 1, 1962.

After the corporation had been operating for one and one-half years and in July 1963, plaintiff requested a special

meeting of the shareholders for the purpose of electing a new board of dirctors. The meeting was held August 1. Donald E. Stem, vice president and director of the corporation, on behalf of plaintiff challenged the right of defendants to vote 197 shares of stock on the ground that those shares had not been issued in conformity with the commissioner's permit. Thereupon defendants moved to adjourn the meeting to August 8. Defendants voted their 510 shares in favor of the motion; plaintiff voted its 490 shares against the motion. The president, defendant Ernest Joiner, declared the motion carried and adjourned the meeting to August 8.

Donald E. Stem stated that he deemed the motion to adjourn defeated and that the business of the meeting would continue. Defendants withdrew. Then, with Stem presiding, the meeting continued and Donald E. Stem, Alma J. Stem and Mildred Wooley were nominated and elected as directors of the corporation by a vote of 490 shares each. The newly elected directors, at a special meeting, elected Donald E. Stem, president; Alma J. Stem, vice president and Mildred Wooley, secretary.

Upon demand, defendants refused to surrender the control and records of the corporation to the new officers and continued as directors and officers of the corporation to exercise power, duties, authority and control of the corporation. On August 8, defendants held the purported adjourned meeting of shareholders. Donald E. Stem attended this meeting announcing that he attended on behalf of plaintiff, solely to protest the meeting and to protect plaintiff's interests. He again challenged defendants' right to vote 197 of said shares. His protest was overruled and defendants voted their 510 shares in favor of defendants Ernest Joiner, Louise Joiner and Donald E. Stem as directors. Stem, under protest and to protect plaintiff's rights, voted plaintiff's 490 shares in favor of himself, Alma Stem and Mildred Wooley. President Ernest Joiner declared himself, Louise Joiner, and Donald E. Stem duly elected as directors.

It is the validity of these two different elections that this action was brought to determine.

At the trial, at the completion of plaintiff's evidence,[1] defendants' motion for judgment was granted pursuant to section 631.8, Code of Civil Procedure. The court made find-

---

[1]Defendant Ernest Joiner was cross-examined under Code Civ. Proc., § 2055.

ings of fact and conclusions of law. Judgment was entered in favor of defendants.

■ Where, as here, the appeal is from a judgment entered pursuant to motion for judgment made under section 631.8, after findings of fact and conclusions of law are made, the rules applicable to a motion for nonsuit, among others, that the reviewing court must view the evidence in the light most favorable to the appellant, are not applicable. ■ As said in *Estate of Sharff* (1963) 219 Cal.App.2d 128, 132 [33 Cal. Rptr. 52] : ''Unlike a motion for nonsuit, where on appeal all intendments are in favor of the appellant, the court, in acting on a motion under section 631.8, 'shall weigh the evidence' and its findings are entitled to the same respect as are any other findings of a trial court.''

■ The purpose of the adoption in 1961 of section 631.8 was to enable the court, at the completion of the plaintiff's case, if it found that plaintiff's evidence was not sufficient to justify requiring the trial to continue further and defendant to produce evidence in defense, to weigh the evidence and make findings of fact as in other trials. As said in *Woolliscroft* v. *Starr* (1964) 225 Cal.App.2d 667, 669-670 [37 Cal.Rptr. 570], concerning findings and judgment pursuant to section 631.8, ''Insofar as evidentiary support of a finding made by the court is concerned we must therefore treat the court's finding and judgment here as though it were a finding made and judgment granted after a trial where evidence had been produced in support of both sides. An appellate court cannot substitute its judgment on the facts for that of the trial court if the findings of the trial court are supported by any competent and substantial evidence, properly in the record. When a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will uphold the disputed finding. (*Estate of Bristol,* 23 Cal. 2d 221 [143 P.2d 689] ; *Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557].)''

### 1. *Sections 2236-2238, Corporations Code, apply to this type of action.*

■ Plaintiff's complaint brought pursuant to the above sections alleges the holding of the election for directors of the defendant corporation, and the voting of the shares claimed to be owned by defendants. Incorporated in the

complaint, is an exhibit which sets forth the challenge made by plaintiff at the election meeting and the reasons plaintiff contends that certain shares of stock voted by defendants were not validly issued and therefore void. These reasons are hereinafter set forth. Despite defendants' contention to the contrary the complaint states a cause of action.

Defendants contend that the summary proceeding established by those sections was never intended by the Legislature to apply to a proceeding, such as here, which includes questions of accounting, estoppel, laches, waiver, and the determination of the legality of the issuance of stockholders' shares. To determine this question it is necessary to review the history of former section 315, Civil Code, the predecessor of these sections.

Section 315, Civil Code was originally enacted in 1872, (Stats. 1872, Mar. 21) and provided ''Upon the application of any person or body corporate aggrieved by any election held by a corporate body, or any proceedings thereof, the District Judge of the district in which such election is held must proceed forthwith summarily to hear the allegations and proofs of the parties, or otherwise inquire into the matters of the complaint, and thereupon confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice. Before any proceedings are had under this section, five days' notice thereof must be given to the adverse party, or those to be affected thereby.''

Subsequently the section was amended without substantial changes in the provisions that any shareholder could obtain court action to determine the validity of any election or appointment of any corporate director and that the action should be heard within five days of the filing of the complaint unless for good cause a later date was fixed. In 1947 (Stats. 1947, ch. 1038, pp. 2347, 2348) section 315 was codified into the Corporations Code and broken up into three parts which became sections 2236, 2237 and 2238 of the Corporations Code.

Section 2236 provides in pertinent part, ''Upon the filing of an action therefor by any shareholder, the superior court shall try and determine the validity of any election or appointment of any director of any domestic corporation, or of any foreign corporation if the election was held or the appointment was made in this State.'' Section 2237 provides: ''Upon the filing of the complaint, and before any further proceed-

ings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless for good cause a later date is fixed, and requiring notice of the date for the hearing and a copy of the complaint to be served upon the corporation and upon the person whose purported election or appointment is questioned and upon any person (other than the plaintiff) whom the plaintiff alleges to have been elected or appointed, . . ." Section 2238 provides: "The court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, and direct such other relief as may be just and proper."

Since the original enactment of section 315 a number of actions have been brought pursuant to it and its successor sections. A review of these indicates that although summary in nature, the actions provided for by it were not intended to be, as contended by defendants, merely to determine technical and procedural questions involved in a corporation election. Among the decisions on the subject are the following: In *Whitehead* v. *Sweet* (1899) 126 Cal. 67 [58 P. 376], the complaint alleged that the defendant Sweet had agreed with the stockholders of the corporation that he would transfer to the plaintiff 2,050 shares of the stock with proxy irrevocable to vote for five years the said stock for the benefit of the corporation; that Sweet violated the agreement by not transferring said stock; that at a meeting of the stockholders the plaintiffs were illegally removed as directors and that certain persons, the majority of whom were under the control of Sweet were illegally elected directors. It then alleged that the illegally elected directors entered into a contract in the name of the corporation with Sweet for the purchase from him of a certain patent; that the directors illegally levied an assessment of $4.00 per share on the corporate stock to pay Sweet for his patent, and were advertising plaintiffs' stock for sale under said assessment. Then by a supplemental complaint the plaintiffs alleged that their stock had been sold under this illegal assessment. The defendants demurred to the complaint. In sustaining the trial court's action in overruling the demurrer the reviewing court stated: "It is true that in general a court of equity has no inherent power or jurisdiction to entertain a bill for the purpose of reviewing a corporate election and ousting the parties who claim to have been elected. It was not part of the original jurisdiction of chancery, and in most of the states of the Union such

jurisdiction does not exist. But in order to avoid the delays and difficulties attending the old remedy of *quo warranto,* statutes have been enacted in many of the states which give courts of equity the power to review corporate elections, and among such states is our own.'' (P. 72.)

The opinion then set forth Civil Code section 315 and said: ''Under our code there is but one form of action, and if the complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action. If the facts are such as address themselves to the equity side of the court, the appropriate relief will be granted by the court sitting as a court of equity.'' (*Whitehead* v. *Sweet, supra,* p. 73.)

''The gist of the action being to declare the election of the board of directors void and illegal, this being established, it follows that the acts by which the assessment was levied the attempted sale of stock of plaintiffs, and the contract made with the defendant Sweet, August 20, 1894, were all done without authority and void. The agreement of defendant Sweet with the stockholders of the corporation to transfer to plaintiff Baldwin two thousand and fifty shares of the capital stock, with irrevocable proxy for five years, for the benefit and protection of the corporation, having been violated, its violation might properly be adjudicated in this suit. A court of equity having acquired jurisdiction would administer complete relief and adjust the case in all its branches.'' (P. 75.)

''Where a court of equity has once obtained jurisdiction it will decide the whole case. It will not permit litigation by piecemeal, but will determine the whole controversy so as to prevent further litigation. [Citation.] Where all the parties in interest are, with sufficient pleadings before a court of equity, it can and will take hold of the entire case and give effect to their contracts legally made. (*Cross* v. *Zellerbach,* 63 Cal. 643.)'' (*Whitehead* v. *Sweet, supra,* 126 Cal. 67, 76.)

*DeGarmo* v. *Goldman* (1942) 19 Cal.2d 755 [123 P.2d 1], is an action brought under section 310, Civil Code, to remove corporation directors. In discussing whether that section provided for equitable relief (the court held that it did) the court said: ''An example of a statutory equitable remedy is section 315 of the Civil Code. Under this section, upon the filing of an action therefor by a shareholder of a corporation, the superior court shall have the power to try and determine

the validity of the election or appointment of any director. Forty years ago, it was held that this statute enlarged the historical jurisdiction of chancery and provided an equitable remedy." (P. 760.)

*Simpson* v. *Nielson* (1926) 77 Cal.App. 297 [246 P. 342], was a proceeding brought under section 315 of the Civil Code to determine the validity of a corporation election, wherein it was contended that a certain voting agreement was void. The complaint asked for a temporary order restraining the alleged illegally elected directors from acting, which the trial court issued. It was contended that the court had no jurisdiction to issue such an order because of section 526 of the Code of Civil Procedure which denies the right to an injunction to prevent the exercise of a public or private office. As to this contention the court said: "This action is brought under section 315 of the Civil Code, which expressly provides a mode of procedure to determine the validity of elections to corporate offices. The proceeding is one in equity. (*Dulin* v. *Pacific Wood & Coal Co.*, 103 Cal. 357, 364 [35 P. 1045, 37 P. 207].) Thus the court had the power to issue a temporary restraining order as auxiliary relief pending final determination of the controversy." (P. 299.)

In *Boericke* v. *Weise* (1945) 68 Cal.App.2d 407 [156 P.2d 781], a proceeding brought under section 315, Civil Code, to have the validity of the election of corporation directors determined, estoppel of the defendants to challenge the validity of the election was an issue. (In our case, as stated, defendants contend that Corporations Code, sections 2236-2238, cannot apply for the reason that estoppel is one of the issues raised here.) The court said: "[s]ection 315 [Corp. Code, §§ 2236-2238] is a remedial statute. It obviously was intended to confer upon the superior court the power to determine in a summary proceeding whether or not a particular director or the entire board was or was not properly elected or appointed in order that the corporation can properly function." (P. 411.) Therefore, when a shareholder seeks to sustain an election or contest the validity of an election, all factors requisite to a determination of the legality of the election will be reviewed including the question of whether or not certain votes were properly cast. The court also stated, "There can be no doubt that this proceeding is equitable in nature. . . ." (P. 418.)

In *Lawrence* v. *I. N. Parlier Estate Co.* (1940) 15 Cal.2d 220 [100 P.2d 765], a proceeding under section 315, Civil Code, to determine the legality of a corporate election re-

moving certain directors and electing others, it was claimed that through fraud the ownership of certain corporate shares did not appear on the corporation's records, because of which certain shareholders were not permitted to vote at the election. Before considering the evidence on the question of fraud the reviewing court said, "Preliminarily, we may say that an action under Civil Code section 315 is in the nature of an equitable proceeding in which the court will consider all matters necessary to a proper determination of the validity of the contested election, and also all matter necessary to a just direction of the relief required in each instance. [Citations.]'' (P. 227.)

*Olincy* v. *Merle Norman Cosmetics, Inc.* (1962) 200 Cal. App.2d 260 [19 Cal.Rptr. 387] was an action brought under sections 2236-2238, Corporations Code, to determine the validity of the election of corporation directors. The effect of a voting trust agrement was involved. In upholding the judgment of the trial court holding that the election proceedings were violative of the voting trust agreement and ordering a new election to be held, and barring one of the removed directors from reelection for a specified period, the reviewing court said, ''[S]ection 2238, Corporations Code specifically authorizes the court to 'order a new election to be held . . . and direct such other relief as may be just and proper.' In *Edward Sidebotham & Son, Inc.* v. *Chandler,* 183 Cal.App.2d 823, 831 [7 Cal.Rptr. 216], this court said: 'An action to determine the validity of a corporation shareholders' election is equitable in nature and the court will administer complete relief and adjust the case in all of its branches in order to prevent multiplicity of action. (*Boericke* v. *Weise,* 68 Cal. App.2d 407, 411 [156 P.2d 781].) The action of the trial court is in accord with the general rule that a court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the causes of action in order to do complete justice and prevent further litigation. [Citation.]' '' (Pp. 274-275.) (Accord: *Edward Sidebotham & Son, Inc.* v. *Chandler* (1960) 183 Cal.App.2d 823, 831 [7 Cal.Rptr. 216].)

*Wisler* v. *Wisler* (1961) 198 Cal.App.2d 511 [17 Cal.Rptr. 813] was a proceeding brought under sections 2236-2238, Corporations Code, to determine the validity of a stockholder's election. The principal question was, as in the case at bench, whether the consideration for the issuance of stock as required by the corporation commissioner's permit had been re-

ceived by the corporation. The court held that the evidence showed that it had.

*National Stone Tile Corp.* v. *Voorheis* (1928) 93 Cal.App. 738 [270 P. 286], was an action in mandamus to obtain possession of the books, records, files, etc., of a corporation and to determine the validity of election of corporation directors. Involved was the validity of the issuance of certain shares of stock, the holder of which was denied permission to vote these shares. The respondents moved to dismiss the action upon the ground, among others, set forth in the following extract from the opinion: "They assert that the petitioners have a plain, speedy, and adequate remedy at law and they refer to the provisions of Civil Code, section 315. That section provides a remedy to review the election but does not purport to afford the petitioners the relief which they ask in this action. The point may not be sustained. (*Dufton* v. *Daniels,* 190 Cal. 577, 581 [213 P. 949].)" (P. 744.) The court denied the motion to dismiss and held that mandamus was a proper remedy. This case appears to hold, contrary to the cases hereinbefore discussed, that section 315, Civil Code provides a remedy *at law* rather than in equity. It should be noted that this ruling is apparently based on *Dufton,* cited in the opinion. *Dufton* does not provide a basis for such a ruling. That involved an application for a writ of mandamus to compel the state board of control to allow a certain claim, and had nothing whatever to do with section 315, Civil Code. Moreover, the holding was that even though, as claimed by the respondents, there was available a remedy at law "it does not necessarily follow therefrom that mandamus is unavailable because of the existence of such a remedy." The court then discussed the situation in which mandamus will lie even though there is an adequate remedy at law. As *National Stone Tile, supra,* is against the weight of authority in this state and is not supported by the case it cited, it must be disregarded.

In *Shamel* v. *Lite Products Sales, Inc.* (1955) 131 Cal. App.2d 33 [279 P.2d 1020], two consolidated actions were brought under section 2236, Corporations Code, to determine the validity of the elections of directors of two corporations. The opinion states without comment, " 'The remedy invoked by plaintiff in these cases involves questions of dissipation of assets, possible fraud, equitable rights, complex accounting, and other issues which could not possibly be within the purview of the legislature in providing a summary remedy to

determine validity of an election of directors. Whatever dubious legal validity may attach to the attempted transfer of the voting rights to a portion of escrowed stock, without permit, the fact remains that the act was freely performed by plaintiff and he acquiesced therein throughout the various meetings and elections now contested.' " (P. 36.) The reviewing court sustained the judgments granting nonsuits in each case on the ground that the plaintiffs had failed to meet their respective burdens in failing to prove irregularity in the elections. As no consideration was given to the rulings in other cases holding that in the equitable action under section 2236 the court will consider all matters necessary to a proper determination of the validity of the contested election and also all matters necessary to a just direction of the relief required in each instance, we do not consider that *National Stone Tile Corp.* and *Shamel* are authority for a ruling contrary to the weight of authority.

■ We hold that sections 2236-2238, Corporations Code, providing as they do for a proceeding in equity to determine all questions which may affect the validity of a contested election, authorize the action here brought.

It should be pointed out, however, that the proceeding must be limited to matters bearing on the question of the validity of the election. Matters of corporate behavior, dealing with corporate management, general accounting, etc., cannot be considered unless they affect the validity of the election.

2. *Some of the challenged shares were not validly issued.*

Plaintiff's challenge to the validity of 197 of the shares issued to defendants is as follows: (1) As to 44 shares—the balance sheet of December 31, 1961, listed as part of the assets of defendants' business to be transferred to the new corporation an automobile belonging to defendants. The listed value of the automobile was $2,750. Plaintiff contends that this automobile was never transferred to the corporation until after the commissioner's permit had expired. Dividing the stated value of a share of stock, $61.70, into the $2,750 indicates, says plaintiff, that 44 shares issued defendants were void.

(2) As to 77 shares—the balance sheet showed defendants' business to be subject to liabilities as of December 31, 1961, of $27,170.75. The permit only recognized liabilities in that amount. Plaintiff contends that the business at that time was subject to an additional liability of about $4,800 for

unexpired subscriptions. Thus, at $61.70 per share, 77 shares were issued in violation of the permit.[2]

1. *The Automobile.*

■ The court found that the automobile was transferred to the corporation, that the challenged 44 shares representing the value of the auto were issued for consideration and were validly issued. The evidence concerning the automobile reveals that no formal document transferring title of the automobile to the corporation was delivered until October 8, 1962, when a bill of sale of it was executed. (The permit expired September 12.)

The automobile was not listed in the inventory of the assets to be transferred by defendants to the new corporation. However in the December statement an item appears listing the auto at $2,750 and an entry to that effect was entered on the corporation's books as of January 2, 1962.

Although defendant Ernest Joiner had full control of the automobile until the execution of the bill of sale, there was evidence that the automobile was on call 24 hours a day for use in the corporation's newspaper business. The corporation paid all the expenses for the maintenance of the car. Donald E. Stem as an executive of the corporation for a time signed the checks for these expenses. Stem and Ernest had agreed that the latter as part of his employment was to have the control of the car including the right to use it for personal purposes while Ernest held the position of publisher of the paper. About March 29, 1962, Ernest went to have the automobile's license transferred to the corporation, and then found that the pink slip was held by a Texas bank for an indebtedness of his which he thought had been paid. Later Ernest paid off the obligation and the title was transferred. The automobile was carried on the books of the corporation as an asset as of January 1, 1962, and was depreciated from time to time thereon.

Although there was some conflict in the evidence (a conflict which the court resolved favorably to defendants) the evidence supports the conclusion that although formal transfer was not made until after the expiration of the permit, the automobile was considered an asset of the corporation but left to the control and use of Ernest as the corporation's

[2]At oral argument plaintiff withdrew its contention that 76 shares were void because of certain losses of the corporation and adjustment of accounts owed by defendants, all occurring after the transfer of defendants' business.

publisher. Under the circumstances, the court's finding that the 44 shares of stock were validly issued is well supported even though a transfer in writing of title was not made until after the permit had expired.

## 2. *The Prepaid Subscriptions.*

█ The court found that the liability of the business transferred to the corporation was as shown on the December 31 balance sheet and that there was no $4,800 additional liability due to the prepaid subscriptions, and that therefore the 77 shares attacked by plaintiff were validly issued.[3]

The court further found that said balance sheet was not intended by the parties to constitute a precise statement of the assets and liabilities of the business to be transferred; that the parties intended it to be a generalized statement to facilitate the transfer of the business to the corporation.

The evidence shows that at the time of the transfer of the business to the corporation, the defendant's business was on a cash basis and had treated the monies paid in advance for subscriptions as cash when received. According to Kaufhold, the certified public accountant employed by the corporation, under this system of accounting, the balance sheet of the business properly did not reflect any liability for deferred subscription income and Kaufhold saw no reason for putting it in the balance sheet. There was no discussion between the parties as to whether such an item of liability should be included in the balance sheet at the time of the transfer to the corporation. The question of a deferred subscription income as a liability was not raised until a year later when it became necessary to prepare a tax return for the corporation for its first year of business. Mr. Kaufhold, who maintained the books and accounts of the corporation, testified that deferred subscription income was to a large extent an accounting technique and that from an accounting standpoint it could be handled either as a cash receipt or as later done in the preparation of the tax return. In fact Mr. Kaufhold was not sure if he would have considered the

---

[3]Apparently the court used this figure of $4,800 as an approximation of the amount of the prepaid subscriptions. Defendants used the same figure in their reply brief. Plaintiff's accountants differed as to the amount of these subscriptions. One stated it to be $4,855.82, the other $4,157.24. As the court made no finding as to the correct amount (its finding in effect was that there was no liability for any amount of prepaid subscriptions), and as the exact amount will have to be determined on retrial, we will use the $4,800 figure mentioned by the court, and the 77 shares represented by it, for illustrative purposes.

deferred subscriptions on December 31, 1961, as a true liability of the defendants' business; it was the type of liability which a lay person might not well consider. However, the fact remains that the prepaid subscriptions, whether properly to be carried on the books or not, were a liability of the business. Subscribers had paid in advance their subscriptions to the newspaper. This meant that the new corporation on transfer of the business was liable to deliver newspapers to the extent of these subscriptions. Put another way, the corporation was liable to the subscribers for $4,800 worth of newspapers for which the corporation would not be paid and for which defendants had received and kept the price. Thus, defendants were transferring to the corporation a business whose liabilities were $27,170.75 disclosed on the December balance sheet plus $4,800 not disclosed but for which the corporation would have to give value to these subscribers. Therefore the net value of the business, instead of being, as represented to plaintiff and the commissioner, $31,471.66, was actually $4,800 less than that sum. Thus, the issuance to defendants of the 77 shares for which $4,800 in value was not received by the corporation was in direct violation of the commissioner's permit and hence void.

Apparently neither of the parties was aware of the deferred subscription situation at the time of the transfer of defendants' assets. No contention is made that defendants acted fraudulently in this matter or intentionally concealed the true situation. The lack of disclosure was due to defendants' methods of bookkeeping in which these subscriptions were considered cash income, and the failure of Kaufhold, who apparently was inexperienced in newspaper accounting, to discover the situation and mention it in the December statement. However, this does not change the fact that defendants were issued 77 shares more than those to which they were entitled. The permit to issue stock was based not on the amount of gross annual income of the business to be transferred, but upon the net value of that business, and not upon any particular balance sheet but upon condition that the liabilities of the business be only $27,170.75.

Nor does the fact that the court found that the parties did not intend that the December balance sheet was to constitute a precise statement of the assets and liabilities of the business but only intended it to be a generalized statement change the situation. The condition of the business as shown in the December statement was represented to the Corporation

Commissioner to be the basis for the issuance of stock to defendants and was made the basis for and condition of the permit.

The court's finding that the allegation that the business transferred to the corporation was subject to additional liability in the amount of $4,800 was not true is not supported by the evidence. There is no conflict in the evidence as to the fact that there was this amount of deferred subscriptions. Therefore, as matter of law, regardless of methods of bookkeeping, the business was subject to that liability.

There was testimony that newspapers are commonly bought and sold on the open market based primarily upon the amount of gross annual income, rather than a complete detail of all the assets and liabilities of the business. However, the evidence in this case shows that the sale or transfer was to be made based upon the December statement which the parties erroneously assumed correctly showed the then condition of defendants' business.

In *Mannion* v. *Baldwin* (1933) 217 Cal. 600, 603 [20 P.2d 678], the court said that it is the rule in this state that permits issued by the Corporation Commissioner for the sale of stock must be strictly complied with.

In *Reed* v. *Norman* (1953) 41 Cal.2d 17 [256 P.2d 930] an action brought to contest the validity of the election of corporation directors, the Corporation Commissioner's permit provided for the stock issued to him partly in cash and partly by credit. In holding that the shares so issued were void the court said,

"Section 26100 of the Corporations Code provides that securities issued in nonconformity with the terms of a stock permit are void, and it is well settled that stock must be sold and disposed of in strict compliance with the provisions of the permit authorizing its issuance." (Pp. 19-20.)

In *Lebal Co. of America, Ltd.* v. *Mastrup* (1942) 51 Cal. App.2d 232 [124 P.2d 348], the Corporation Commissioner's permit provided for the sale of stock "for cash or for not less than 25 per cent in cash, the balance payable in six equal monthly cash installments." (P. 232.) The stock was issued to the appellant who "would pay for said stock at an uncertain time in the future, when he was able to sell some Transamerica stock owned by him, which at the time of the negotiations was impounded in another transaction." (P. 233.) The court held:

"The contract for the sale of this stock is void for non-

conformity with the requirement of the permit of the Corporation Commissioner. (*Commercial Building Co.* v. *Levy*, 108 Cal.App. 54 [290 P. 1048]; *Commercial Building Co.* v. *Summers*, 117 Cal.App. 428 [3 P.2d 1033]; *Domenigoni* v. *Imperial Livestock & Mortgage Co.*, 189 Cal. 467 [209 P. 36]; *Imperial Livestock & Mortgage Co.* v. *Tracy*, 208 Cal. 205 [281 P. 50].)''

■ Section 1300 Corporations Code which provides that every person to whom shares are originally issued is liable to the corporation for the full consideration agreed to be paid for the shares does not apply to void shares.

In *Coast Amusements, Inc.* v. *Stineman* (1931) 115 Cal. App. 746 [2 P.2d 447], it is stated: ''Answering respondent's first contention, the evidence conclusively establishes that the stock was issued in violation of the permit and accordingly void. In view of this fact and the facts stated in the companion case of *Becker* v. *Stineman et al.*, we see little merit or justice to the claim which would permit respondent corporation to recover a judgment for the full price of stock issued which was void.'' (P. 750.)[4] It is clear therefore from the evidence before the court, that the issuance of the 77 shares of stock was void. This brings us to the question of whether plaintiff may now urge the invalidity.

The court found 1. That plaintiff actively participated in the formation of the corporation, the application for the issuance of the stock permit, the transfer of the assets of defendants' business and the issuance of the stock thereunder. (This finding does not affect the situation concerning the deferred subscriptions.) 2. The plaintiff actively participated in the conduct of the business of the corporation up to and including the time of filing of plaintiff's complaint. (This finding is not supported by the evidence as to the situation subsequent to September 29, 1962, when defendant Donald E. Stem was removed from his position as treasurer and was no longer required to sign corporation checks.) 3. That the defendants relied upon the words, action and conduct of plaintiff in the transfer of the business. (Again this has no reference to the prepaid subscriptions.) 4. That at no time did plaintiff advise defendants of any of the alleged violations of the stock permit and defendants had no notice of any alleged violation of the permit. (The record shows that the prepaid subscription situation became known to both

---

[4]*Becker* v. *Stineman* (1931) 115 Cal.App. 740 [2 P.2d 444].

parties in November or December 1962.) 5. That plaintiff, by words, actions and conduct, has waived any right to complain of the alleged violations and he is estopped from doing so. The court further found that for more than one and one-half years defendants acted in good faith and upon the validity of the stock issued them, and that plaintiff is guilty of *laches* and in equity and good conscience plaintiff should be denied the relief sought; which would work a severe hardship upon defendants, constitute a forfeiture of their investments in and control over the newspaper business transferred to the corporation and that defendants are entitled to equitable relief in accordance with section 3275, Civil Code.

 It appears from the authorities that where the issuance of stock is void, the defenses of laches, waiver and estoppel may not be applied against a stockholder holding valid shares raising the question of the validity of other shares.

In *Herkner* v. *Rubin* (1932) 126 Cal.App. 677 [14 P.2d 1043] the court stated: "Where a statute prohibits or attaches a penalty to the doing of an act the act is void (*Smith* v. *Bach*, 183 Cal. 259 [191 P. 14]; and this is true of an issuance of stock in violation of the permit granted by the Corporation Commissioner (*Boss* v. *Silent Drama Syndicate*, 82 Cal.App. 109 [255 P. 225]; *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal.App. Supp. 783 [288 P. 29]; *Commercial Bldg. Co.* v. *Levy*, 108 Cal.App. 54 [290 P. 1048, 1049]; *Otten* v. *Riesener Chocolate Co.*, 82 Cal.App. 83 [254 P. 942]; *Becker* v. *Steinman*, 115 Cal.App. 740 [2 P.2d 444]; *Domenigone* v. *Imperial etc. Mortgage Co.*, 189 Cal. 467 [209 P. 36]; *Gridley* v. *Tilson*, 202 Cal. 748 [262 P. 322]; *Barton* v. *El Canto Apartments*, 216 Cal. 500 [14 P.2d 501]). Moreover, the doctrines of estoppel by conduct and ratification have no application to a contract which violates an express mandate of the law (*Pollak* v. *Staunton*, 210 Cal. 656 [293 P. 26])." (P. 681.)

In *Regan* v. *Albin* (1933) 219 Cal. 357 [26 P.2d 475] the court said: "The rule that a security issued without a permit or in violation of the terms of a permit is *void* under former section 12 of the Corporate Securities Act, has been frequently declared, and must now be taken as well settled in this state." (P. 359.)

". . . an estoppel cannot ordinarily be invoked to give validity to a contract which is void through violation of law.

This rule has likewise been repeatedly declared, and has been applied in a number of cases in this state dealing with shares of stock void because of the absence of, or nonconformity with a permit. (See *Walker* v. *Harbor Realty etc. Corp.*, 214 Cal. 46 [3 P.2d 557]; *Pollak* v. *Staunton*, 210 Cal. 656 [293 P. 26]; *Reno* v. *American Ice Machine Co.*, 72 Cal.App. 409 [237 P. 784].) The precise question now before us has also received the attention of the appellate courts in this state. In *Herkner* v. *Rubin*, 126 Cal.App. 677 [14 P.2d 1043], shares had been issued in violation of conditions of the permit, and creditors sought to hold the defendant stockholder liable. It was held that no liability could be imposed. An application for a hearing in this court was denied. In *Honn* v. *Hamer*, 81 Cal.App. 276 [253 P. 336], and *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal.App. Supp. 783 [288 P. 29], the same conclusion was reached.'' (P. 360.)

In *Munton* v. *Bekins* (1935) 9 Cal.App.2d 228 [49 P.2d 338], stock issued in violation of the Corporate Securities Act the court said: ''Respondent relies upon the doctrine of estoppel. But numerous California cases have held that the doctrine of estoppel may not ordinarily be invoked to give validity to a contract which is void through violation of law, and this rule has been declared and applied in cases dealing with shares of stock void because of the absence of or nonconformity with a permit.'' (P. 230.)

As said in Volume 11 Fletcher Cyclopedia of Corporations, page 470, ''. . . an estoppel cannot operate to create stock which, under the law, cannot have existence. . . .''

Defendants have cited for their contention that plaintiff is estopped to attack the issuance of the 77 shares, only *Michell* v. *Grass Valley Gold Mines Co.* (1929) 206 Cal. 609 [275 P. 418]. There 10 owners of real property, including the plaintiffs, who desired their property to be developed for mining entered into an agreement with a promoter by which a corporation was to be formed, the owners were to deed their mining rights to the corporation for stock to be issued to them in agreed amounts and certain stock was to be issued to the promoter. The parties were advised a Corporation Commissioner's permit was not necessary. After the property was transferred to the corporation, the stock issued as agreed and other stock sold to the public, the plaintiffs discovered the mistake in the advice given them and that a permit would have to be obtained. Thereupon plaintiffs notified the corporation that they were rescinding the contract and demanded

the reconveyance to them of their property. The demand not being met they sued for rescission. Thereafter the corporation filed with the Corporation Commissioner an application for a permit to issue the stock contemplated by the promotion agreement. The property owners, the plaintiffs included, protested the application. The action was tried while the application was still pending. The plaintiffs alleged fraud in the issuance of the stock without a permit. The court held that it would be inequitable to permit rescission, because first, the plaintiffs were *in pari delicto,* secondly, the plaintiffs joined in opposing the issuance of the permit, thirdly, the plaintiffs waited more than a year to rescind, during that time rights of third parties had intervened. It is clear from the opinion that the main ground of the denial of the rescission is that set forth as follows: ''When the rights of others have intervened, and the circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining parties left to their action at law.'' (P. 617.)

In the case at bench, plaintiff was not *in pari delicto* with defendants in the issuance of the 77 shares of stock as at the time it knew nothing of the prepaid subscriptions, nor did any rights of third parties intervene.

To have a waiver it is essential that there be an existing right, benefit or advantage, a knowledge, actual or constructive, of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished. (51 Cal.Jur.2d pp. 307, 308, § 3.)

The evidence fails to show these elements. The finding of waiver is not supported, nor is the finding of laches.

Laches is neglect or failure on the part of a plaintiff in the assertion of a right that, when taken in conjunction with a more or less lengthy period of time, and also in connection with other circumstances prejudicial to the defendant, will operate as a bar in equity to the successful maintenance of the plaintiff's cause of action. (18 Cal.Jur.2d 201, § 36.) Just how delay from November or December 1962 when plaintiff learned about the deferred subscriptions until August 12, 1963, when this action was filed, prejudiced defendants does not appear. It must be remembered that defendants have had issued to them 77 shares of the corporation's stock for which they have not paid.

As shown in *Kent* v. *Kent* (1935) 6 Cal.App.2d 488, 492

[44 P.2d 445], the court in a situation of the kind here may declare the 77 shares void because not issued in accordance with the permit without affecting the other shares issued in compliance with the permit.

On the evidence before the court it appears that 77 shares of the 510 shares of stock issued to defendants were void, and being void defendants could not vote them at the stockholders' meeting. This left defendants only 433 valid shares to vote on the motion to adjourn the stockholders' meeting of August 8. Plaintiff voted its 490 shares against the motion. Thus, the motion to adjourn should not have carried. Therefore, the directors voted for by plaintiff received a majority of the votes represented by valid shares and were elected.

It is not clear from the record whether the understanding of the parties was that part of the consideration for the transfer by defendants to the corporation of their business and assets was that defendants were to have control of the new corporation. The formal agreement executed by the parties, merely states that for such transfer defendants "propose to accept" 510 shares. Usually, in situations such as here where one party transfers to a new corporation a going business and the other party supplies money in the form of stock purchases, the matter of the control of the corporation is one of great concern to the transferor, and is understood and agreed to by the other party. Whether this is the situation here we do not know. If it were, our determination that the 77 shares of stock issued defendants are void frustrates an important consideration for the transfer.

Therefore, it is necessary that the cause be remanded to the trial court to determine what the true situation is.

The court's decision in this case was made upon a motion for judgment under section 631.8, Code of Civil Procedure, at the close of plaintiff's case. That section expressly provides that the movant may make the motion "without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted." Obviously, the same rule would apply if, on appeal, it is held that the motion was improperly granted.

In view of our determination the case will have to be remanded to the trial court to permit defendants to offer evidence in support of their defense and in rebuttal of the following issues:

1. The exact amount of the prepaid subscriptions and the

liability therefor, including the question of whether in the newspaper business there is a custom in the industry not to consider prepaid subscriptions as a liability and whether the parties bargained with such custom in mind.

2. The legal issue of "another action pending."

3. The issues of waiver and laches, which the court found were not supported by the facts before it.

4. The determination, after such issues are decided, of the amount of valid shares defendants owned and had and have the right to vote.

5. The determination of whether control by defendants was a consideration agreed to by both parties. If so, and if the court should find any shares of stock held by defendants to be void, the court should order defendant corporation to apply to the Corporation Commissioner for a permit to issue to defendants shares of stock equivalent in number to those found to be void, upon payment therefor to the corporation of $61.70 per share.

The judgment is reversed and the cause remanded to the superior court for further hearing on the issues above mentioned in accordance with the views herein expressed.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied February 19, 1965, and the opinion and judgment were modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 24, 1965.